### UNITED STATES of America
### v.
### John ALU, Defendant-Appellant.
### No. 11772.

United States Court of Appeals
Third Circuit.
Argued March 23, 1956.
Decided July 17, 1956.

James F. McGovern, Jr., Jersey City, N. J. (Louis P. Caroselli, Jersey City, N. J., on the brief), for appellant.

Frederic C. Ritger, Asst. U. S. Atty., Newark, N. J. (Raymond Tel Tufo, Jr., U. S. Atty., Newark, N. J., on the brief), for appellee.

Before MARIS, McLAUGHLIN and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

In this appeal from a conviction for perjury under 18 U.S.C.A. § 1621, the issue is whether the proofs were of the standard required in such case.

The facts are simple. Appellant testifying before a grand jury was asked: " * * * do you know anything about payroll padding at Dade Brothers while you were down there?" He answered, "No sir." Dade Brothers, Inc. at the time was a subcontractor under a government contract, with a water-front transportation operation at Claremont Terminal, Linden Avenue, Jersey City, New Jersey.

To show appellant had lied under oath the government produced three evidential items. The first consisted of payroll records and pay checks of Dade Brothers covering employees' time for their pay period ending October 30, 1951 and relating to Chester Lotarnowski, John A. Clancy, Joseph Martino, David Drummond, John Rowanson and Frank F. Tarnowski. With the exception of Rowanson these names did not appear on the payroll records after the close of the October 30th period. Rowanson was also shown in the time listed for the following month. Six pay checks to the order of the above names all dated November 2, 1951 and in the amount of $17.55 were put into evidence by the government. The Lotarnowski and Clancy checks were endorsed in the name of the payee with a second endorsement "S. Costa". Salvatore Costa said that the two checks were cashed by him for appellant and were endorsed with his father's signature. He stated that on some occasions when he cashed checks for Alu other persons were present. He did not remember whether that was the fact at the time he cashed the particular checks. The Martino, Drummond, Rowanson and Tarnowski checks were endorsed in the name of the payee with a stamped second endorsement "Joseph Wagner". Joseph Wagner, Sr. testified he had cashed the four checks for Alu. Eight witnesses for the government, between them showing knowledge of all the addresses listed for the six names during the critical dates, stated that such persons neither lived nor were known at the given addresses.

The second item consisted of seven time cards of Dade Brothers admittedly signed by Alu. These were found October 29, 1951 with twenty-eight others in the possession of one Joseph Gernie. Finally there was testimony by three Jersey City water-front squad police officers who in response to a telephone call, apparently on November 2, 1951, went to New York that same day and met with Alu. According to one of them Alu said, "I want you to lay off the boys over on Linden Ave. We have got a good thing going there." The officer asked "What's it all about?" Alu replied, "Well, you've got two of our men in now [Gernie and another]. * * * There is 10G's in this, and we can fix you up with up to ten checks a week. I know you have to take care of someone else, so we can go as high as ten checks." Alu also stated " * * * if we can get the time cards back there will be something extra in it for you."

The government contends that it has accomplished its formidable task of satisfying the federal requirement of perjury proof by the above evidence. It

urges that ordinarily in a successful payroll padding scheme the records on their face would probably seem correct and that other than a principal's confession, the only method of establishing the fraud is proof that supposed persons listed as employees and their pay collected as such were in fact nonexistent or at least had not worked as the records indicated. So it is argued that the testimony produced properly establishes that payroll padding did exist at Dade Brothers in October-November 1951 while appellant was there and to his knowledge.

Regarding Alu having been at Dade Brothers during the time involved, appellant's full answer to the above quoted critical inquiry is in the trial record and was directly before the jury in the charge. The question asked " * * * do you know anything about payroll padding at Dade Brothers while you were down there?" The answer was "No sir. All I went there is for a day's work, and the F.B.I., they have been checking on me and I've been working since, just a plain longshoreman." This is not contradicted and makes it plain that Alu did work at Dade Brothers. The detective's testimony that Alu told him and his fellow officers November 2, 1951 that "I want you to lay off the boys over on Linden Ave. We have got a good thing going there * * *" could create an inference of Alu's identification with the Dade Brothers business on Linden Avenue, Jersey City[1] during the critical interval though, as is argued for appellant, it might possibly be implied from the first sentence quoted that Alu was not present at the particular time. In both the direct examination of the witness Costa and on a query by the court it was assumed that Alu worked for Dade Brothers and presumably at the time when the Lotarnowski and Clancy checks were cashed by him. Costa in effect agreed with that assumption, and this was never denied; nor was there any intimation that Alu's presence at Dade Brothers during October-November 1951 was disputed.

■■■ If proof of Alu's presence at Dade Brothers during October-November 1951 were governed by the usual standards there was enough in the above evidence to have permitted the government to go to the jury on the question. But the objective of the evidence was to establish a vital fact in the perjury charge. The fact was capable of being shown directly as it had to be in order to sustain the indictment. It is still the law that strict proof is necessary to justify a charge of perjury. Under Weiler v. United States, 1945, 323 U.S. 606, 607, 65 S.Ct. 548, 549, 89 L.Ed. 495, " 'The Government must establish the falsity of the statement alleged to have been made by the defendant under oath, by the testimony of two independent witnesses or one witness and corroborating circumstances.' " And see United States v. Neff, 3 Cir., 1954, 212 F.2d 297; United States v. Nessanbaum, 3 Cir., 1953, 205 F.2d 93. The Remington decision[2] attempted no change in that rule. It is cited for the proposition " * * * that it is the facts from which the jury may infer the accused's state of mind that must be proven by 'direct' evidence" but it goes no further than that.[3] It does not permit fundamental objective facts to be so indicated. Actually it condemned the trial court's charge where the jury was told " 'You may not have direct proof of a fact but you may have circumstances from which

---

1. The witness stated that Dade Brothers was the only concern with port "waterfront" facilities operating on Linden Avenue at that time. He said "The conversation was about Linden Ave. and that was Dade Brothers' operation."

2. United States v. Remington, 2 Cir., 1951, 191 F.2d 246, 249.

3. This language is most appropriate to the allegation that Alu had knowledge of the payroll padding. It states accurately the type of acceptable proof to demonstrate that knowledge. See also American Communications Ass'n v. Douds, 1950, 339 U.S. 382, 411, 70 S.Ct. 674, 94 L.Ed. 925.

you are able to draw reasonable conclusions and deductions.'" Commenting on this the appellate opinion said, 191 F.2d at page 250: "Hence, despite recital in the charge of the rule as to two witnesses or one corroborated witness, the jury may have thought that they could select such evidence as they chose as proof of guilt and were free to convict on circumstantial evidence alone, which is not the law in the federal courts."

 The same lack of direct proof confronts us in connection with the charge that "payroll padding" had occurred at Dade Brothers. Again, if circumstantial evidence were allowed there is enough proof from which legitimate inference could be drawn that payroll padding did exist. The time cards of the particular six payroll names, the checks to their order cashed by appellant, the uncontradicted testimony that they neither lived nor were known at the addresses given for them, the Dade Brothers blank time cards signed by Alu, his statements to the police. From these, pieced together, payroll padding at Dade Brothers during October-November 1951 could be deduced. There are gaps in the story, for example the stated social security numbers of the six, the police prohibition against undesirable out of town elements being employed at Dade Brothers which could possibly convey the thought that fictitious Jersey City addresses might therefore be used to thwart that restriction. Even so, absent the perjury evidence essential, a jury question would have been presented on whether there was payroll padding at Dade Brothers at the time specified. Practically speaking, additional indication of the fact may have been impossible to obtain for there is no lack of industry by the government revealed either in preparation or trial of this troublesome matter. Nevertheless since the facts of the payroll padding and Alu's attendance at Dade Brothers during the time fixed were capable of direct proof they had to be so substantiated and were not. The trial judge had no difficulty with the governing evidence law. He correctly instructed the jury on the proper rule to guide them. However, because of the failure to establish the primary elements of the alleged perjury in accordance with that rule, namely, by the direct testimony of two witnesses or one, with corroborating circumstances, the case in that posture should not have been allowed to go to the jury at all.

The judgment of the district court will be reversed and the cause remanded to the district court for further proceedings not inconsistent with this opinion.