**UNITED STATES of America, Appellee,**

v.

**Vincent M. FIORILLO, Defendant-Appellant.**

**No. 351, Docket 30985.**

United States Court of Appeals Second Circuit.

Argued March 7, 1967.

Decided April 3, 1967.

---

Irving Anolik, New York City, for defendant-appellant.

Edward Meyer, Asst. U. S. Atty., Southern Dist. of New York (Robert M. Morgenthau, U. S. Atty., and Douglas S. Liebhafsky, Asst. U. S. Atty., on the brief), for appellee.

Before LUMBARD, Chief Judge, and WATERMAN and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Vincent M. Fiorillo, long engaged in the garbage collection business in Westchester County and elsewhere, was convicted on trial to the jury in the United States District Court for the Southern District of New York, Edward Weinfeld, Judge, of perjury[1] in his testimony before a Southern District Grand Jury investigating possible violations of the Hobbs Anti-Racketeering Act in the garbage collection industry, and he appeals. We find no error and affirm the judgment.

Appellant's chief claims are insufficiency of proof and error in the charge relating to the required quantum of proof, error in refusal of a request during the trial by defense counsel that he be allowed to withdraw since he felt he should testify, violation of the Communications Act by an agent's listening in on a telephone conversation, prejudicial cross-examination of defendant, entrapment, and lack of materiality of the perjured testimony.

Before the Grand Jury, appellant testified as follows:

"Q. Now I ask you, Mr. Fiorillo, if you received a telephone call from Tony Vone in March of this year in which Vone asked you whether you had contacted Nick Perry and Tobia DeMicco concerning the permanent transfer of this Daitch stop to Vone? A. No, sir.

Q. You never received any such telephone call from Vone? A. No, sir. From Vone?

Q. Vone. A. Not to my recollection.

Q. Are you quite sure of that? A. I am positive.

Q. Now, do you recall telling Vone in a telephone conversation this year that you had not contacted Nick Perry or Tobia concerning the transfer of the stop, but you expected to contact them in the near future? A. Why would I want to contact them? They had no bearing on that, nothing to do with that. It was my account. I was servicing that account for Daitch-Shopwell. So why would they be involved in that? I don't know what—where did you get the information, but it's wrong. This is my ac-

---

1. Title 18 U.S.C. § 1621.
   *Perjury generally*
   Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury, and shall, except as otherwise expressly provided by law, be fined not more than $2,000 or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States.

count. It's not anybody else's. It was my account, Daitch-Shopwell in Pelham and I have been doing—I have had it for fifteen years approximately.

Q. Is it your sworn testimony, sir, that you never told Tony Vone that you were going to be contacting these other men; namely, Nick Perry and Tobia DeMicco, concerning this Daitch-Shopwell stop? A. Never.

Q. Did you ever tell Tony ·Vone or anybody else that you couldn't transfer this Daitch-Shopwell stop at Pelham without the consent of Nick Perry and DeMicco? A. No, sir.

Q. And you are positive of that? A. Positive.

Q. Did you ever tell Tony Vone or anybody else that you in fact had contacted Nick Perry and Tobia De-Micco and they had told you to take this stop, this Pelham stop of Daitch-Shopwell's, away from Vone and give it back to D'Onofrio? A. No, sir."

■ Taking the evidence in the light most favorable to the government, as we must, United States v. Padilla, 374 F.2d 782 (2d Cir., March 13, 1967), it appears that the appellant had been in the garbage collection business for many years, as had his father before him, and that he had been barred from the business in the Bronx because of his association with one Nicholas Ratenni, also known as Nick Perry. The Grand Jury was investigating possible violations of the Hobbs Act in the Southern District in the garbage and refuse collection field. One Tony Vone, a small operator in the field, was soliciting an account at a new Geigy Chemical plant in Suffern, New York, late in 1964. Appellant asked him to desist from the solicitation, since appellant had invested money in the account, apparently a $5,000 "gift" to a Geigy officer to influence the awarding of the contract. Appellant offered in exchange to subcontract to Vone the Daitch-Shopwell stop on Pelham Road in New Rochelle, which was at the time under contract to appellant and by him subcontracted to one D'Onofrio. Vone agreed and in January 1965 began to service the Daitch stop. Among other garbage collection companies in the area were Westchester Carting owned by Ratenni and Valley Carting owned by one Tobia DeMicco.

In February, Fiorillo called Vone and told him he was under pressure from Ratenni and others and might have to give the Daitch stop back to D'Onofrio. On a morning in March, appellant called Vone, who was out. On Vone's return he called but failed to reach appellant. When appellant returned the call, F. B. I. Agent Taylor was in Vone's office and with Vone's permission listened in on an extension phone. Appellant told Vone that the Daitch subcontract would have to be returned to D'Onofrio, that Ratenni and DeMicco were putting pressure on appellant and that without their permission to do otherwise he would have to return the stop to D'Onofrio. Vone asked appellant to talk to Ratenni and De-Micco again and appellant said he would see what he could do. A few days later D'Onofrio's company resumed the service of the stop.

■■ The testimony of Fiorillo before the Grand Jury was plainly material to an investigation of possible Hobbs Act, 18 U.S.C. § 1951,[2] violation by obstruct-

2. Title 18 U.S.C. § 1951.

   *Interference with commerce by threats or violence*

   (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in viola-

   tion of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

   (b) As used in this section—

   (1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or

ing, delaying or affecting commerce or the movement of a commodity in commerce by extortion or attempted extortion, or threats or violence. Materiality turns on the testimony's potential, viewed as a matter of law to be decided by the trial court, for affecting the course of the inquiry. United States v. Winter, 348 F.2d 204 (2d Cir.), cert. denied, 382 U.S. 955, 86 S.Ct. 429, 15 L.Ed.2d 360 (1965); United States v. Marchisio, 344 F.2d 653, 665 (2d Cir. 1965). If, as appellant assumes, the interstate character of the commerce under investigation makes a difference here, it was sufficiently shown by testimony of the foreman of the Grand Jury and the minutes.

■ The proof of falsity of the appellant's testimony before the Grand Jury was clearly sufficient, since the telephone conversation was testified to by two witnesses, Taylor and Vone, and there was, moreover, substantial corroboration in the treatment of the Daitch stop, as well as in the evidence of a post-indictment attempt to obtain an exculpatory affidavit from Vone.

After the indictment of appellant, appellant had met Vone and an associate of his, one Feraca, at a diner run by Charles Reiter. Appellant asked Vone for an affidavit of recantation respecting the phone call in question and Vone refused. Thereafter appellant had arranged to help Vone obtain a truck for use in his business.

■ Judge Weinfeld correctly charged the jury it could convict on the basis of direct testimony of two witnesses or of one witness plus independent and trustworthy corroborating circumstances.

There is not nor ever has been a requirement that where two witnesses testify, circumstances must be ignored. Weiler v. United States, 323 U.S. 606, 65 S.Ct. 548, 89 L.Ed. 495 (1945), merely required instruction that the corroborating circumstance must be trustworthy, while United States v. Alu, 236 F.2d 179 (3d Cir. 1956), also cited by appellant, merely held that essential facts in dispute must be proved by direct testimony of at least one witness rather than by circumstances alone. 236 F.2d at 181–82. Indeed, such a rule would be ridiculous when the government uses more than one witness or the defense witnesses implicate the accused. Here, both Vone and Taylor testified for the government, and if Vone was disbelieved because of his criminal record, or Taylor's testimony was incredible for any reason, circumstances elicited from appellant's case regarding his past relationship with Vone and the post-indictment meeting were sufficient to corroborate their testimony. Clearly, the jury would not have convicted had they disbelieved both Vone and Taylor.

■ The claim of entrapment is made, but upon what basis escapes us. There is no slightest indication that the government instigated the false testimony or implanted the idea of lying in Fiorillo's mind. Compare Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932); United States v. Chiarella, 184 F.2d 903, 908 (2d Cir. 1950), reversed on other grounds, 341 U.S. 946, 71 S.Ct. 1004, 95 L.Ed. 1370 (1951).

■ The claim of error for refusal of the court to permit withdrawal of counsel

property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

(3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the

United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

(c) This section shall not be construed to repeal, modify or affect section 17 of Title 15, sections 52, 101–115, 151–166 of Title 29 or sections 151–188 of Title 45.

during the trial is based on the fact that appellant's trial counsel, one Terkeltoub, decided to take the stand to contradict Vone's version of the post-indictment diner meeting, during part of which counsel was present. The possibility of such a situation had been known to counsel and to appellant before the trial date was set, for the government had disclosed to court and counsel its intention to call Vone to testify concerning the diner conversation, pointing out that counsel had been present and a conflict might arise. The court required counsel to take the matter up with appellant, and with full knowledge of the possibility, counsel, with appellant's consent, entered upon the trial without employing other counsel. There was no error in these circumstances in going on with the trial even though Terkeltoub took the stand.

■ No case has been found requiring a new trial because the complaining party's attorney testified at trial hence depriving him of the assistance of counsel. Such a claim seems untenable unless the attorney testifies *against* his client who is unable to cross-examine him. Nor does the record show that appellant's counsel was distracted from his defense by preoccupation with his own testimony and credibility. Nor was appellant prejudiced by such testimony since, unlike Weil v. Weil, 283 App.Div. 33, 125 N.Y.S.2d 368 (1st Dept.1953), cited by appellant, the attorney's testimony was in favor of the party complaining on appeal. *The rule of Weil is not that an interested attorney's testimony is always incompetent but that an attorney should not deliberately put himself in a position where he becomes a relevant witness and then testify when other witnesses are available.*

■ Testimony of the attorney for a party is not incompetent in federal court. Lau Ah Yew v. Dulles, 257 F.2d 744, 746 (9th Cir. 1958); United States v. Clancy, 276 F.2d 617, 636 (7th Cir. 1960), reversed on other grounds, 365 U.S. 312, 81 S.Ct. 645, 5 L.Ed.2d 574 (1961); Steiner v. United States, 134 F.2d 931 (5th Cir.), cert. denied, 319 U.S.

774, 63 S.Ct. 1439, 87 L.Ed. 1721 (1943). Of course, the attorney should not be called when no showing of necessity is made as when the testimony or evidence could be procured from other sources, Gajewski v. United States, 321 F.2d 261, 268–269 n. 9 (8th Cir. 1963), cert. denied, 376 U.S. 968, 84 S.Ct. 486, 11 L.Ed.2d 416 (1964); see United States v. Alu, 246 F.2d 29 (2d Cir. 1957); United States v. Chiarella, supra, 184 F.2d at 911. If prejudice is likely to result from such testimony, complainant's remedy is not to await appellate review but to withdraw his counsel, and a trial court may therefore condition admissibility of such testimony on counsel's withdrawal. United States v. Clancy, supra. A change of counsel rests, however, within the court's discretion and is not permitted or required absent prejudice. United States v. Ellenbogen, 365 F.2d 982, 988–989 (2d Cir. 1966). Even an opposing attorney may testify, when such testimony is relevant and otherwise unobtainable, United States v. Chiarella, supra (by implication), and if prejudice is imminent, counsel's withdrawal is the appropriate remedy. United States v. Maloney, 241 F. Supp. 49, 50–51 (W.D.Pa.1965).

In view of the conflicting testimony between Vone and appellant, counsel's testimony was relevant and reasonably necessary as he was the only other party present in court who witnessed the conversation (though Feraca, Vone's associate, could have been subpoenaed). Finally since no prejudice resulted to appellant and the government does not complain, the trial court did not abuse its discretion in refusing to permit withdrawal, especially since appellant himself requested counsel's continuance, which may be considered a waiver.

■ Appellant attacks several questions put to him on cross-examination. One was whether he carried a gun. Since the government knew that he had a permit to carry it, it is hard to tell what the examiner was seeking to show, for no claim was made that there was evidence Fiorillo threatened anyone with it other than that he had carried it during strikes.

**186**

However, the cross-examination was perhaps broadly relevant to Fiorillo's claim of long established good reputation in this industry, cf. United States v. Bowe, 360 F.2d 1, 14 (2d Cir. 1966), and in any case the objection to the question put was sustained, and no request for further action by the trial court appears to have been made. We cannot find plain error here.

 Fiorillo was also asked on cross whether he had not been ejected from the garbage business in the Bronx. There does not appear to be anything improper here, in view of Fiorillo's explanation that he had, indeed, had his New York City license cancelled because of his former partnership with Ratenni, and, in view of the fact that he had denied the claimed telephone conversation as to his present relationship with Ratenni. Moreover, on direct examination in response to his counsel's questions, Fiorillo made numerous assertions as to his good reputation as an "outstanding representative" of the garbage collection industry and thus opened the door to the government's question relating to Fiorillo's being ejected.

It is well-settled that no statutory or constitutional violation ensues from the use of evidence resulting from use of an extension by an agent with the consent of either of the parties to the conversation. Rathbun v. United States, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957) (either party is deemed a "sender"). The "alter ego" requirement relied on by appellant was rejected by the *Rathbun* majority and was proposed only by the dissenters. 355 U.S. at 114, 78 S.Ct. 161. There, as here, the consent of the *receiver* of the call was held sufficient to avert a statutory violation. Cf. United States v. Ballou, 348 F.2d 467, 468 (2d Cir. 1965), sustaining the use of evidence picked up by magnetic device with the consent of the receiver.

Finally, admission of Taylor's testimony did not violate the Fifth Amendment because appellant's statement to Vone was not involuntary in any sense, nor was appellant required to be warned or offered counsel at such an early stage in the investigation, See Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The judgment is affirmed.