**UNITED STATES of America,**
**Appellee,**

v.

**Ilario ZANNINO et al., Defendants,**
**Appellants.**

**No. 72–1153.**

United States Court of Appeals,
First Circuit.

Heard Sept. 12, 1972.

Decided Nov. 7, 1972.

Joseph J. Balliro and Francis J. Di-Mento, Boston, Mass., with whom Dimento & Sullivan, Balliro & Woodrow, Boston, Mass., Robert V. Mulkern, Fusaro & Fusaro, Worcester, Mass., and Ronald J. Chisholm, Boston, Mass., were on briefs for defendants-appellants.

Edward F. Harrington, Special Atty., Dept. of Justice, with whom Joseph L. Tauro, U. S. Atty., and Albert F. Cullen, Jr., Special Atty., Dept. of Justice, were on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE, Circuit Judge, and HAMLEY,* Senior Circuit Judge.

McENTEE, Circuit Judge.

Appellants Zannino, Balliro, Limone, and Strauss were convicted for transporting or aiding and abetting the transport of goods in interstate commerce knowing the same to have been stolen. Appellants filed a motion for new trial based upon newly discovered evidence. This motion was denied. In United States v. Strauss, 443 F.2d 986 (1st Cir.), cert. denied, 404 U.S. 851, 92 S.Ct. 87, 30 L.Ed.2d 90 (1971)[1] we affirmed this denial and the underlying convictions. Shortly thereafter appellants filed a second motion for new trial based upon alleged additional newly discovered evidence. The trial court also denied this motion and these appeals follow.

This case stems from the robbery of a Boston jewelry store on March 24, 1966, by Erwin Soroko and Charles Lombardi. After the robbery Lombardi, Soroko, and his girl friend, Joanne, hid the jewelry in a New Hampshire cottage. Soroko was subsequently convicted in state court for his role in the robbery and in 1970 he pleaded guilty in federal court to interstate transportation of stolen jewelry.[2]

Soroko and Joanne were the government's chief witnesses in the instant case. At trial Soroko testified that on April 7, 1966, at "around 1 o'clock" in the afternoon he conferred with Balliro at the Intermission Lounge in Boston and offered him a share of the proceeds

---

* Of the Ninth Circuit, sitting by designation.

1. The underlying facts are set forth in detail in this opinion.

2. The same trial judge who heard these cases accepted Soroko's plea and sentenced him.

if he would find a buyer for the jewelry. Shortly thereafter Balliro told Soroko that Zannino was interested. Around 3:00 or 4:00 p. m. that same day Zannino and Limone came to the lounge and met with Soroko. Balliro was also present. They agreed that Zannino's appraiser, Strauss, would examine the merchandise and on April 8 Soroko, Balliro, and Strauss drove to the New Hampshire cottage. After brief negotiations, Strauss and Soroko reached an agreement on price and the threesome returned to Boston with the jewelry that afternoon. On this evidence the jury found the appellants guilty as charged.

Appellants' first motion for new trial was based upon a newly discovered notebook entry which placed the time of an April 7 meeting between Soroko, State Police Lieutenant James DeFuria and Boston Police Officers Timmons and Brooks at Murray Alpert's Buy-Rite market at 3:30 p. m. This notation directly contradicted Soroko's testimony that he had been discussing the sale of the stolen goods with Zannino and Limone at the Intermission Lounge at that time. The evidence adduced at the hearing on this motion indicated that on April 7 DeFuria, Timmons, and Brooks travelled to the Buy-Rite market sometime after attending a morning hearing at the Boston Municipal Court involving Lombardi. Timmons, the owner of the notebook, did not recall whether he made the entry that afternoon or on the following morning. Only Lieutenant DeFuria independently recalled the incident and he testified that it occurred "anytime after 12 o'clock to 1:00, 1:30 at the latest." Soroko, as corroborated by Joanne, testified that they had arrived at the market between 11:00 and 11:30 that morning. He claimed to have spent fifteen to twenty minutes there and then to have made a fifteen to twen-

ty minute drive to Joanne's home in Winthrop where she made lunch for her children. School records indicated that the children had returned to school by 12:45 p. m. On this evidence the court concluded that the notebook entry was inaccurate and denied the motion.

Appellants next filed the motion for new trial which is the subject of the instant appeal. The alleged newly discovered evidence which supports this motion is Lieutenant DeFuria's refreshed recollection of his activities of April 7. As he now remembers, he agrees with the notebook entry that the market incident occurred at approximately 3:30 p. m. His recollection is corroborated to some extent by that of Detective Sergeant Crowley.

At the hearing on this motion, DeFuria testified that his memory had been triggered by reading Crowley's name in his own testimony in the trial transcript.[3] As set forth in his affidavit of November 16, 1971, DeFuria recalled the following events of April 7. He remembered leaving Boston Municipal Court with Crowley shortly after twelve noon, walking through downtown Boston to the Radar Restaurant, and Crowley declining his luncheon offer. After eating lunch, he recalled walking to Crowley's office in the District #2 police station. There Timmons and Brooks joined him and the three of them decided to interview Joanne and Alpert. They proceeded to Alpert's market in an unmarked car. Timmons and Brooks questioned Alpert for ten or fifteen minutes and after learning that Soroko was expected, returned to the car. There they waited "a good thirty minutes or more" until Soroko arrived. DeFuria also stated that he read the first three digits of Soroko's registration plate to Timmons as Soroko drove by.[4] Brooks interviewed Joanne for ten

---

3. In his affidavit DeFuria stated that his memory was refreshed by rereading the trial transcript, discussing the events of April 7 with Crowley, Zannino's attorney, and others, and by reviewing over and over again in his mind his activities on that day.

4. DeFuria admitted on cross-examination that this statement was incorrect. He testified that he read the plate numbers to Timmons as Soroko *departed* from the market.

or fifteen minutes while Soroko was in the market. Thereafter the three officers lost Soroko's car in traffic. On these facts DeFuria concluded that the notebook entry fixing the time of the meeting at the market as 3:30 p. m. was accurate. Sergeant Crowley's affidavit corroborated DeFuria with regard to the walk from Municipal Court to the restaurant, his refusal to join DeFuria for lunch, the meeting in his office, and the subsequent departure of Timmons, Brooks, and DeFuria in an unmarked car.

On cross-examination DeFuria admitted that although his memory had been refreshed in February 1971, he did not reveal this to anyone for four months and then disclosed it only to defense counsel.[5] He also admitted that he had attempted to refresh Crowley's memory at the insistence of Attorney DiMento who represented the appellant Zannino. The government introduced a witness fee list[6] for April 7, 1966, which included DeFuria's signature and thus demonstrated that, contrary to his affidavit, he had collected a witness fee at some time on the day in question. DeFuria initially stated that he had no recollection of this event. After a brief court recess, however, he claimed that he now recalled this event and proceeded to testify about it in great detail. The government also produced a semi-monthly report in which DeFuria claimed supper expenses for June 18, 1971, an evening on which he admitted Attorney DiMento had purchased his dinner for him. In addition, a number of discrepancies came to light between what he recalled at the instant hearing and a statement he had given to the FBI in October 1971. Sergeant Crowley testified on cross-examination that he had "partial recall" of the events of April 7, but his testimony demonstrated that he had no memory of the events other than those which DeFuria had discussed with him.[7]

Appellants' primary contention is that, in light of DeFuria's refreshed recollection, Soroko's testimony regarding the events which he claimed took place between 11:00 a. m. and 12:45 p. m. on April 7 could not possibly have been true because it would be impossible for all of the events which he and the police officers described to have occurred within a one hour and forty-five minute period.[8] In addition, appellants again raise the question of the possible accuracy of the 3:30 p. m. notebook entry.[9] The overriding thrust of these arguments is, of course, that if this evidence had been introduced at trial it might have cast some doubt on Soroko's credibility.

The trial court, however, chose not to believe the refreshed recollection of

---

5. He explained this unusual conduct by claiming that he feared "repercussions" if he changed his testimony.

6. State police officers who appear as witnesses in cases in municipal court are paid a fee for their appearance. They receive a witness chit and are required to sign a witness fee list when they cash this chit at the Boston City Hall Annex.

7. Crowley had not been called to testify at the hearing on the first motion for new trial because he had stated that he did not remember the events in issue at that time.

8. Appellants' argument may be set forth more fully as follows: accepting 11:00 a. m. (Soroko's claimed time of arrival at the market) and 12:45 p. m. (the time when the children returned to school) as the two crucial times, it is simply impossible for all of the following events to have occurred in the interim—the walk to City Hall, DeFuria's receipt of his witness fee, the walk to the Radar Restaurant, DeFuria's lunch, the walk from the restaurant to Crowley's office, the wait for Brooks and Timmons to arrive, the drive to the market, the interview with Alpert, the wait for Soroko's arrival, the interview of Joanne while Soroko was in the market, Soroko's drive to Winthrop, the preparation and consumption of the children's lunch, and the children's return to school.

9. Appellants called Officer Brooks who testified that on April 7 he observed Timmons writing in his notebook when he returned to the car after interviewing Joanne. This contention has been deemphasized on appeal.

DeFuria and Crowley. In denying the motion, it made the following findings: (1) that the officers' refreshed recollection was not a real one but a reconstruction of what might have happened if the 3:30 p. m. notebook entry were accurate; (2) that the facts testified to by the officers did not prove that Soroko had testified falsely when he described the meetings in the lounge on April 7, 1966; and (3) that refreshed recollection under these circumstances did not constitute newly discovered evidence.[10]

▇▇▇ The question on appeal is whether the court abused its discretion in denying appellants' second motion. As we said in United States v. Leach, 427 F.2d 1107, 1111 (1st Cir.), cert. denied, 400 U.S. 829, 91 S.Ct. 95, 27 L.Ed. 2d 59 (1970), "[m]otions for new trial are directed to the trial court's discretion. Under its broad power, the court may weigh the evidence and consider the credibility of the witnesses. The remedy is sparingly used. . . ." In light of DeFuria's proven penchant for reconstruction, the documentary evidence (the witness fee list) which contradicted his affidavit, the inconsistencies between his sworn statement and his statement to the FBI, and the fact that Crowley had no memory of any of the events of April 7 other than those which DeFuria had discussed with him, we find that the evidence supports the court's conclusion as to the officers' lack of credibility. Therefore, we conclude that no abuse of discretion occurred in the denial of the motion.

▇▇▇ Little need be said with regard to appellants' contention that the government intentionally suppressed the witness fee list in violation of the due process requirements of Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L. Ed.2d 104 (1972) and Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L. Ed.2d 215 (1963). The argument that the fee lists might have been used at the hearing on the first motion to refresh DeFuria's memory is without merit since DeFuria had been excused before the fee lists came to the attention of the government.[11] Since the inquiry at that hearing was directed toward finding "time-stamped" documents which would indicate when the officers left Municipal Court, the lists had little probative value since they contain no notation of time of payment. The relevance of these lists to the second motion became apparent only when DeFuria revised his testimony. Obviously the government cannot be faulted for failing to anticipate this change in his testimony.

▇▇▇ Appellant's final contention is that the trial judge erred in failing to disqualify himself from hearing the instant motion. The appellants argue that the judge made certain findings which are contrary to facts urged in support of the instant motion when, at earlier proceedings, he accepted Soroko's guilty plea and denied appellants' first motion for new trial. The court found, pur-

---

10. Both parties have briefed and argued the question of whether a refreshed recollection may constitute newly discovered evidence. Although no cases which stand for this proposition have been cited, and we have not discovered any, appellants urge our adoption of this position based on an analogy to the recanting witness cases. While we are inclined to agree with the trial court's resolution of this issue, our disposition of this appeal does not require us to confront this difficult espitemological question. We note in passing, however, that even if we were to treat this recollection as newly discovered evidence our disposition would be the same. Under the traditional tests for newly discovered evidence set forth in *Strauss, supra,* 443 F.2d at 989–990, a new trial would not be warranted because the evidence supports the trial court's findings with regard to the credibility of the officers' revised testimony and the court's finding that the revised testimony did not prove that Soroko had testified falsely when he described the April 7 meeting at the lounge.

11. DeFuria was excused on December 7, 1970. The government became aware of the fee lists on December 10, 1970.

suant to Local Rule 8(i),[12] that a hearing before it would result in a substantial saving of time and that there was no reason why in the interest of justice the hearing should be conducted before another judge.

We note that appellants' reliance upon *Halliday v. United States*, 380 F.2d 270, 272–274 (1st Cir. 1967), aff'd on other grounds, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), is somewhat misplaced. In *Halliday* the same trial judge presided at two separate proceedings involving the defendant; he accepted defendant's guilty plea and sat in judgment on his § 2255 petition. However, as we said in that case, "[i]n the continuation of a single proceeding, *as on a motion for new trial,* important considerations suggest that the hearing should be before the original judge." (Emphasis added.) *Id.* at 272. One of these important considerations, the saving of court time, has particular application to a motion for new trial which, like the instant motion, raises especially complex factual questions. In addition, unlike *Halliday* where the defendant expressly requested that his § 2255 petition be heard before a different judge, appellants raised no objection until this appeal to the court's failure to refer the instant motion to another judge. This belated objection belies appellants' claim of prejudice. *See* Goldfine v. United States, 268 F.2d 941 (1st Cir. 1959), cert. denied, 363 U.S. 842, 80 S.Ct. 1608, 4 L.Ed.2d 1727 (1960).

Turning to appellants' specific claims of prejudice, we note first that the trial judge resolved no issues which bore upon the instant motion when he accepted Soroko's plea and sentenced him. The issue there was whether Soroko understood the nature of his guilty plea, not whether the refreshed recollections of DeFuria and Crowley were credible. In denying the first motion for new trial, the court found that the April 7 entry in Timmons' notebook had been made in two separate installments and that the second part of the entry which included the 3:30 p. m. notation had been made sometime after the day in question.[13] Again, this finding does not conflict significantly with appellants' present contention that Soroko's testimony is incredible in light of the police officers' revised testimony.[14] At the hearing on this motion, however, appellants also reasserted their earlier contention that the 3:30 p. m. notebook entry was accurate.[15] Officer Brooks testified that on April 7 when he returned to the car after questioning Joanne he noticed Timmons writing in his notebook. While this evidence would appear to conflict with the court's earlier finding, it is in fact not inconsistent with it since Brooks may have observed Timmons

12. Local Rule 8(i) provides: "When an appellate court remands a case to this court for a new trial, the case shall be reassigned to a judge other than the judge before whom the first trial was held. In all other cases in which the mandate of the appellate court requires further proceedings in this court, such proceedings shall not be conducted before the judge before whom the prior proceedings were conducted unless he determines that there will result a substantial saving in the time of the whole court and that there is no reason why in the interest of justice, further proceedings should be conducted before another judge. If the judge before whom the prior proceedings were conducted does not retain the case for further proceedings, he shall return it to the clerk for reassignment."

13. The court found that the April 7 entry had been written with two different pens and, *in view of the difference in the quality of the handwriting in the two installments,* concluded that the installments had been made at two different times.

14. We recognize that the trial court's earlier finding that the 3:30 p. m. entry was inaccurate does conflict with the ultimate conclusion expressed in DeFuria's affidavit that the meeting at the market took place around 3:30 p. m. We do not deem this conflict significant enough to warrant ordering a new trial in light of the other inconsistencies inherent in DeFuria's testimony.

15. *See* note 9, *supra.*

writing the first part of the entry, which could well have been made while the officers were at the market. For these reasons we find appellants' claim of prejudice to be without merit.

Affirmed.