**UNITED STATES of America**
v.
**Nelson G. GROSS, Defendant.**
**Crim. A. No. 324–73.**

United States District Court,
D. New Jersey.
May 15, 1974.

Jonathan L. Goldstein, U. S. Atty., and Richard D. Shapiro, Asst. U. S. Atty., for the United States.

Hannoch, Weisman, Stern & Besser, by Albert G. Besser, and Ronald M. Sturtz, Newark, N. J., for defendant.

## OPINION and ORDER

WHIPPLE, District Judge:

The defendant Nelson Gross moves this Court for a judgment of acquittal pursuant to Fed.R.Crim.P. 29(c) alleging that the evidence presented in the case was insufficient to sustain his conviction for the offenses charged in the indictment or in the alternative, the defendant moves this Court for a new trial

in the interests of justice pursuant to Fed.R.Crim.P. 33.

■ In ruling on a motion for a judgment of acquittal, the test that ought to be applied by the trial judge is that laid down by Judge Prettyman in Curley v. United States, 81 U.S.App.D.C. 389, 160 F.2d 229 (1947):

> . . . a trial judge, in passing upon a motion for a directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion; or, to state it in another way, if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt, the motion must be granted. If he concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, he must let the jury decide the matter. *Id.* 232–233.

In the instant matter, the jury has decided upon the defendant's guilt to what it believed to be beyond a reasonable doubt. The renewal of the defendant's motion for acquittal now is premised on his belief that the jury could not have reached this conclusion rationally on the state of the evidence presented in the case and for this reason the jury's verdict must be overturned, as against the weight of the evidence and as a product of passion and prejudice demanding that a judgment of acquittal be now entered for the defendant.

■ In deciding whether the reasonable juror would have had to have a reasonable doubt concerning the defendant's guilt, the trial court must view the evidence in a light most favorable to the government and give it the benefit of all legitimate inferences. United States v. Hopkins, 354 F.Supp. 634 (E.D.Pa. 1973); Powell v. United States, 135 U. S.App.D.C. 254, 418 F.2d 470 (1969). In the instant case, the defendant bases his motion for a judgment of acquittal on the incredibility of the government's chief witnesses, Leonard Wolfram and William H. Preis, which the defendant believes was established by the thorough cross-examination of Wolfram and by the direct examination of Wolfram's secretary, Ruth Smith, and the Stop and Save Comptroller, Urinyi. In my review of this testimony, I do not consider it inconceivable nor highly improbable that the jury could have rationally believed the testimony of Preis and Wolfram. Further, it is not within the Court's power when ruling on a judgment of acquittal to assess the credibility of the government's witnesses. Its function on this motion is to ponder probabilities, not to reach actual conclusions; the final decision concerning the believability of the government's witnesses rests with the jury. United States v. Allard, 240 F.2d 840 (3rd Cir. 1957); United States v. Morris, 308 F.Supp. 1348 (E.D.Pa. 1970). What the Court does in ruling on the judgment of acquittal is to decide whether a rational juror could find on the state of the evidence that the defendant was guilty beyond a reasonable doubt. This the jury has done and I cannot find its conclusion irrational.

■ The credibility of witnesses comes within the purview of the trial court however, when it rules on the motion for a new trial after the jury has rendered its verdict. At that time, it is incumbent on the Court to evaluate and weigh the evidence in order to decide whether the jury's verdict is against the weight of the evidence and whether a miscarriage of justice has occurred. This motion is directed to the conscience of the Court and it must set the jury's verdict aside, when in its review of the facts, the conviction is contrary to the weight of the evidence. United States v. Wilson, 178 F.Supp. 881 (D.D.C.1959).

■ The jury's verdict, however, is entitled to presumptive validity and the trial court should exercise its authority in this area very sparingly and only in

the most exceptional cases when it is convinced that a gross injustice will have been done if it fails to act. United States v. Provenzano, 240 F.Supp. 393 (D.N.J.1965) affirmed 353 F.2d 1011 (3rd Cir. 1965); United States v. Leach, 427 F.2d 1107 (1st Cir. 1970):

> Motions for new trial are directed to the trial court's discretion. Under its broad power, the court may weigh the evidence and consider the credibility of witnesses. The remedy is sparingly used, the courts usually couching their decisions in terms of "exceptional cases," United States v. Pepe, 209 F.Supp. 592, 595 (D.Del.1962), affirmed 339 F.2d 264 (3rd Cir. 1964), "Miscarriage of justice", United States v. Parelius, 83 F.Supp. 617, 618 (D.Haw.1949), and where "the evidence preponderates heavily against the verdict", United States v. Robinson, 71 F.Supp. 9, 10–11 (D.D.C.1947) . . . . *Id.* 1111

In reviewing the instant matter, the defendant directs the Court to ten alternative bases for the grant of a new trial. The defendant alleges: (1) that the United States attorney knowingly utilized the perjured testimony of Leonard Wolfram in his case in chief (2) that the Court's admission of Joseph Mc-Crane's Fifth Amendment testimony before a Federal Grand Jury was so prejudicial that it rises to reversible error (3) that the Court erred in allowing the United States Attorney to elicit testimony concerning the defendant's economic status (4) that the Court erred in allowing testimony concerning defendant's compliance or failure thereof with the 1925 Federal Corrupt Practices Act, 2 U.S.C. § 241 et seq. (5) that the United States Attorney engaged in conduct throughout the course of the trial which necessitates prophylactic relief by way of granting the defendant a new trial (6) that the plan for petit jury selection in this District is unconstitutional in that it systematically excludes attorneys, public officials and other persons of economic means (7) that the Court erred in charging the jury to ignore the tax de-ductibility of certain items listed on Grand Union's Federal Tax Returns (8) that the verdict is clearly against the weight of the evidence (9) that the Court erred in admitting the hearsay testimony of Bernard Striar and Suzanne Phillips Miller concerning their respective conversations with co-conspirators Anthony Statile and Joseph Mc-Crane and (10) that the Court erred in allowing the naming of Anthony Statile in Count I and Joseph McCrane in Count III of the indictment on the eve of trial. These ten bases for a new trial raised by the defendant may be grouped into four categories. The first of these concerns alleged errors committed by the Court in its rulings on evidence in the course of the trial (Nos. 2, 3, 4 and 9) in its charge to the jury at the close of the case (No. 7) and in its ruling on a pre-trial motion (No. 10). Category two consists of assessing the credibility of Leonard Wolfram and whether his testimony, apparently believed by the jury, is so infirm as to characterize the jury's verdict as substantially contrary to the weight of the evidence (Nos. 1 and 8). Category three charges prosecutorial misconduct by the United States Attorney and his bad faith reliance on perjured testimony (Nos. 1 and 5). Finally, Category four alleges the unconstitutionality of this District's jury selection plan (No. 6).

The issues raised in Category one of the defendant's motion essentially ask this Court to reconsider its rulings rendered during the course of the trial. The burden rests on the defendant to demonstrate that these previous rulings vitiated the essential fairness of his trial and resulted in a denial of due process. United States ex rel. Darcy v. Handy, 351 U.S. 454, 76 S.Ct. 965, 100 L.Ed. 1331 (1956). The defendant previously objected to these rulings when the issues were originally raised and this Court rejected the defendant's arguments then. At this juncture of the case, wherein the burden which the defendant must sustain is much heavier, he has advanced no new arguments and

this Court must therefore reaffirm its previous rulings and deny defendant's motion for a new trial based on these grounds.

In Category two, the defendant properly requests this Court to assess the credibility of the government's witnesses and to determine whether the jury's verdict is contrary to the weight of the evidence. United States v. Zannino, 468 F.2d 1299 (1st Cir. 1972); United States v. Joines, 327 F.Supp. 253 (D. Del.1971). The major thrust of defendant's motion is directed to the credibility of Leonard Wolfram. His demeanor on the witness stand and his responses to the expert cross examination by the defendant's counsel proved him to be a confused and befuddled witness. His memory was confined to the general sequence of events in February and April of 1973 and frequently failed to recall specific dates, specific documents, and the specific words of conversations. The defendant alleges that the witness had a memory of convenience which remembered only these events which would implicate the defendant in a plot to suborn the perjury of William H. Preis and failed to recollect any event which might indicate his own personal participation in this attempted subornation plot. This Court, however, does not go so far. Assuredly Leonard Wolfram was not a strong witness for the government, his lapses of memory and recall of detail, were a frustrating and faltering aspect of the government's case. His testimony was severely neutralized by the defendant's cross examination.

Leonard Wolfram, however, was not the only government witness nor was he necessarily believed fully and confidently by the jury in order for it to justify its guilty verdict. The testimony of Bernard Striar and William Preis along with other government witnesses was sufficient to justify the jury's verdict and, for this reason, the defendant's motion for a new trial based on Category two must also be denied.

Appended to the defendant's attack on the testimony of Leonard Wolfram, there is a technical argument concerning the legal sufficiency of Count V of that indictment. Count V alleges that the defendant suborned the perjury of William Preis before a United States Grand Jury as that perjury is described in 18 U.S.C. § 1623, i. e. that Preis knowingly made a false declaration before the Grand Jury.

The offense which Preis committed is relatively new. It was enacted by Congress in 1970 in order to abrogate the so-called two witnesses rule in perjury prosecutions which demanded that the falsity of a perjured statement be established by the testimony of two independent witnesses. Weiler v. United States, 323 U.S. 606, 65 S.Ct. 548, 89 L. Ed. 495 (1945); United States v. Alu, 236 F.2d 179 (3rd Cir. 1956); United States v. Mc Ginnis, 344 F.Supp. 89 (S. D.Texas 1972); 1970 U.S.Code Cong. and Admin.News, p. 4007. Accordingly, this Court rejected defendant's requested charge at the close of the case which would have instructed the jury concerning the two witness rule.

The argument which defendant advances against Count V is relatively simple. He reasons that the subornation statute, 18 U.S.C. § 1622, is expressly directed only toward perjury as that crime is defined in 18 U.S.C. § 1621 and not toward the making of the false declaration described in 18 U.S.C. § 1623. As a result, the defendant claims he has been illegally found guilty of an offense which is not a statutory crime. In the alternative, the defendant contends that if the United States Attorney argues that it was clear to all concerned that the subornation charged in the indictment was of perjury pursuant to § 1621 and merely incorrectly stated as § 1623, then the Court erred in its charge to the jury and for this reason the defendant should be granted a new trial.

This Court concludes that neither of the defendant's constructions or explanations for Count V of the indictment is correct. The subornation statute § 1622 reads: "Whoever procures another to commit any perjury is guilty

of subornation of perjury." By utilizing the term "any" in its legislative language, Congress clearly intended the subornation statute to apply to all perjury which it might define and not to be restricted or limited in its application merely to the offense described in § 1621. It is also evident that since Congress did not attempt to amend the subornation statute in 1970 to include the subornation of a false declaration that it must have concluded that this offense was already defined in its prior enactment of § 1622 just as 18 U.S.C. § 2, the aiding and abetting statute applies to all substantive offenses of Title 18 whether they were enacted prior or subsequent to the statute. For this reason then, this Court concludes that 18 U.S.C. § 1622 defines the crime of suborning the making of a false declaration as well as the subornation of what was previously known as perjury.

 Category three of the defendant's motion alleges gross misconduct by the United States Attorney and, in particular, his knowing reliance on the perjured testimony of Leonard Wolfram. It should be emphatically noted at the outset that the perjured character of Leonard Wolfram's testimony is solely an allegation by the defendant and not an adjudicated matter.

The basis for defendant's allegation is that in the course of eleven lines of transcript, Leonard Wolfram testified to the details of a conversation he had with Nelson Gross in April of 1973. The defendant introduced evidence at trial which tended to demonstrate that the conversation could not have occurred on the date Wolfram reported. The reason for this was that a topic of their conversation concerned a diary and an entry therein. It was established in the course of the trial that this diary could not have been presented to Gross at the time of this conversation because it was not known to exist until more than one week later. The defendant also contends that the United States Attorney was in a position to know the untruth of Wolfram's testimony at the time of his direct examination since the diary in question was discovered and produced only through the efforts and specific request of the United States Attorney's office. As a result, the defendant concludes that the United States Attorney acted in bad faith by introducing into evidence at the trial, testimony which he knew to be false and because of this prosecutorial misconduct, the defendant should be granted a new trial.

In reviewing this argument, the Court finds it apparent that what defendant now sees to be the sequence of events in April of 1973 which makes the date and/or substance of Wolfram's reported conversation with Nelson Gross improbable is a product of information which was produced late in the trial in the course of the defendant's case by the testimony of the diary's custodian, Mrs. Ruth Smith. It is not apparent to the Court that this same information or perspective on the events of April 1973 was known by the United States Attorney during his direct examination of Wolfram let alone at the outset of the trial. In fact, the United States Attorney in his summation conceded the improbability of the diary's having been presented to Gross at the time of the reported conversation. As to the testimony of Leonard Wolfram this Court has already had occasion to remark upon the weakness and contradictions inherent therein. Whatever may be the truth value of Wolfram's testimony, the issue here is whether the United States Attorney deliberately procured false testimony from a witness in his conduct of this trial. There are many unanswered questions raised in the trial of any case but the defendant has produced no telling evidence which would inculpate the United States Attorney of such grievous misconduct as the defendant alleges here.

 The other instances of claimed prosecutorial misconduct which the defendant raises on this motion do not rise to the level of misconduct which this Circuit demands before a convicted defendant may be granted a new trial. As

the Circuit has indicated, trials are "rarely, if ever perfect." United States v. Leftwich, 461 F.2d 586, 590 (3rd Cir. 1972) and errors or acts committed by counsel both for the government and defense, " . . . do not call for a new trial unless they are so gross as probably to prejudice the defendant and the prejudice has not been neutralized by the trial judge before submission of the case to the jury." *Id.* 590, cited also in United States v. Somers, 496 F.2d 723 (3rd Cir. 1974) cert. pending.

The defendant, citing *Somers, supra,* argues that the United States Attorney was guilty of prosecutorial misconduct and this deprived the defendant of a fair trial. I have carefully reviewed the records in this case and I have concluded that there was no prosecutorial misconduct.

In *Somers,* the Court of Appeals held certain remarks of the prosecutor in his opening statement to the jury were improper in that they constituted "overly dramatic unnecessary characterizations" of the defendants and their conduct. *Id.* 21–22 and n. 26 (Slip opinion filed March 27, 1974). The Court also found improper two additional comments of the United States Attorney wherein he indicated that he possessed information not in evidence which implicated the defendants. *Id.* 24–25.

In the present case, it should be noted that this was a long trial (five weeks) and hard fought by both sides. The jury heard the testimony of nine government witnesses and 20 defense witnesses, including the defendant himself.

There is nothing in the alleged improper remarks of the United States Attorney that can fairly be construed as a personal attack on the defendant, as comment on evidence outside the record implicating the defendant or as an opinion of the United States Attorney on the defendant's guilt. The defendant uses the phrase "prosecutorial misconduct" as a catchword to reargue the admissibility of certain evidence and the scope of cross-examination of defense witnesses. Falling into this category are such alleged improprieties as the introduction into evidence of Wolfram's "perjured" testimony, Mc Crane's Fifth Amendment plea before the Grand Jury and defendant's income tax returns and the cross-examination of the defendant and his witnesses concerning defendant's political career, law practice, partnership records and financial status. The areas which the United States Attorney attempted to explore on cross-examination were all "opened up" by defense counsel's direct examination. Since this Court permitted both the introduction of this evidence and this cross-examination, the United States Attorney can hardly be accused of improper conduct.

In addition, defendant cites a number of instances where the United States Attorney allegedly made statements on evidence outside the record. It should be noted that the defendant's attorney in his cross-examination of government witnesses and the defendant in his own testimony attempted to place the United States Attorney's office on trial by insinuation and innuendo to the effect that the United States Attorney himself suborned perjury. On each occasion when this occurred through cross-examination of government witnesses, defense counsel had no bases in fact for his question. During the course of the defendant's cross-examination he purposely interjected news accounts relating to "warfare" between state and federal law enforcement offices and alleged "leaks" from the United States Attorney's office. On each occasion when this occurred, the defendant's answers were unresponsive to the question posed by the United States Attorney. It is obvious that the testimony pertaining to the unsupported charges of "leaks" and "warfare" between law enforcement offices was totally irrelevant to the guilt or innocence of this defendant on the charges set forth in the indictment.

I recall, during the cross-examination of Bernard Striar, a government witness, counsel for the defendant asked Striar without any basis in fact if it were true that an assistant United

States Attorney had pointed out the defendant to Striar in the courtroom in order to assist the witness in his identification of the defendant. The United States Attorney thereupon objected and rightly so to the question and stated that his office did not engage in such conduct.

Taken in context, the United States Attorney's objection served only to neutralize what I consider to be an unfair question by defense counsel. Counsel then made the surprising suggestion in the jury's presence that the United States Attorney take the stand and testify to rebut the insinuation that he had done something which was tantamount to suborning perjury. The United States Attorney did not launch an attack upon the defendant, as was condemned in *Somers*, but merely defended his office by making which I consider to be a proper objection. Defendant was in no way prejudiced by the remark.

■■■ I reach the same conclusion as to the question posed by the United States Attorney concerning "leaks" from his office. Here the United States Attorney was provoked by an unresponsive answer of the defendant to the effect that there were "leaks" emanating from his office. Moreover, rather than objecting to the United States Attorney's questions, defense counsel insisted that his client answer them. The defendant appeared to be waiting for an opportunity to inject the issue of "leaks" into the trial.

Shortly thereafter, the defendant gave another unresponsive answer wherein he recalled reading newspaper accounts concerning a so-called war between the United States Attorney's office and the State Attorney General's office over the investigation of the Writer's Associate invoice. The United States Attorney attempted to cross-examine defendant concerning this alleged incident but was prohibited by this Court. However, I do not find anything stated by the United States Attorney which constituted misconduct in the sense of implicating the defendant or expressing an opinion as to

guilt. Again I find that defendant was not prejudiced by the incident.

Defendant cites other instances of alleged prosecutorial misconduct. As to the United States Attorney's reference to "arson" during the cross-examination of the defense witness Albanese, I conclude there was no prejudice. I consider this Court's prompt cautionary instructions to be effective and sufficient to protect the defendant. I reach the same conclusion as to the partial question asked of Albert Gross: "Did there come a time when you were personally sued by trustees . . . ?" Defense counsel interrupted the question with an objection. Again I consider my stern cautionary instructions sufficient to protect the defendant from any prejudice.

■■■ Defendant cites several other alleged instances of prosecutorial misconduct. Many of these were not objected to at trial. Accordingly, the defendant cannot raise them on his post trial motion. See United States v. Somers, *supra* at 29–30; United States v. Lawson, 337 F.2d 800, 807 (3d Cir. 1969) cert. denied 380 U.S. 919, 85 S.Ct. 913, 13 L.Ed.2d 804 (1965). After carefully reviewing this record in its entirety, I conclude there was no "prosecutorial misconduct" and the defendant was not denied a fair trial. As a result defendant's motion for a new trial based on his third category of objections is also denied.

■■■ Finally, the defendant raises what he considers to be a serious constitutional infirmity in this District's jury selection plan. He argues that the plan in effect in this District systematically excludes attorneys, public officials, professional or business persons and others of high income.

Whatever merit there may be in defendant's allegation, a reading of the precedents available in this Circuit, as well as in the United States Supreme Court, leads me to conclude that defendant's motion comes too late. Although the precedents that the Court will rely

upon deal with the composition of Grand Juries, I consider these cases closely analogous both factually and legally. The selection of petit and grand juries is governed by a single statutory provision 28 U.S.C. § 1867 which requires all objection to the method of the jury's selection be raised prior to the voir dire, 28 U.S.C. § 1867(a) and (e). As a result, the failure to raise a timely objection on these grounds has been held to constitute a waiver based on policy considerations underlying Fed.R.Crim.P. 12(b)(2), Davis v. United States, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973); United States v. Noah, 475 F.2d 688 (9th Cir. 1973); United States v. Zirpolo, 450 F.2d 424 (3rd Cir. 1971). That policy has alternatively been expressed as the need for an orderly process of criminal procedure with sanctions of forfeiture for those who seek to avoid the impact of procedural rules, Fay v. Noia, 372 U.S. 391, 432, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) or finality in criminal judgments, Thorton v. United States, 125 U.S.App.D.C. 114, 368 F.2d 822 (1966). These formalistic considerations, however, have repeatedly been overturned when serious questions concerning the denial of constitutional rights have been asserted, Kaufman v. United States, 394 U.S. 217, 228, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1968); Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). As the Supreme Court said in *Sanders*: " . . . conventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged." *Id.* p. 8, 89 S.Ct. p. 1073.

These legitimate governmental interests in forfeiture and finality have added weight, however, when the convicted criminal defendant alleges unconstitutional composition of a jury in whose selection he actively and vigorously participated. To grant relief in this context would have the Court approve and participate in the defendant's trial tactics which involve the deliberate avoidance of Congressionally approved procedural requirements. If the Court consented to such a course of action, then for every defendant, "(S)trong tactical considerations would militate in favor of delaying the raising of the claim in hopes of an acquittal, with the thought that if those hopes did not materialize, the claim could be used to upset an otherwise valid conviction at a time . .", Davis v. United States, 411 U.S. 233, 241, 93 S.Ct. 1577, 1582, 36 L.Ed.2d 216 (1972).

In the present case, this Court will not be a party to these tactics. The defendant here offers no plausible explanation for his failure to make timely objection to the composition of the jury. The method of selecting the jury panel has been utilized in this District since 1968 and it was implemented pursuant to the standards of 28 U.S.C. § 1861 et seq. No reason has been suggested why the defendant or his counsel could not have ascertained the information relative to his present objection prior to trial or, at least, in the course of the very thorough voir dire of each juror individually and in chambers by the Court with the defendant present as well as counsel for the government and the defense. This Court also does not perceive how prejudice to the defendant's right to a fair trial could have resulted from the jury which was actually selected. For these reasons, this Court denies defendant's motion for a new trial on the basis of his fourth category of objection and it also denies his application for an evidentiary hearing concerning the jury selection practice pursued in this District.

It is, therefore, ordered, this 15th day of May, 1974 that defendant's motion for a judgment of acquittal pursuant to Fed.R.Crim.P. 29(c) and in the alternative for a new trial pursuant to Fed.R.Crim.P. 33 be and the same are hereby denied.