## UNITED STATES v. ROBINSON.
### Criminal No. 197-47.

District Court of the United States for the District of Columbia.

April 2, 1947.

---

Charles H. Garlock and Kenneth D. Wood, both of Washington, D. C., for defendant, for the motion.

George Morris Fay, U. S. Atty., and John Burke, Asst. U. S. Atty., both of Washington, D. C., opposed.

HOLTZOFF, Justice.

The defendant was found guilty by a jury on a charge of robbery and moves to set the verdict aside and for a new trial on the ground that the verdict was contrary to the weight of the evidence. Before discussing the merits, it seems appropriate to define the principles that must govern the court in disposing of the application.

■ When both sides rested, the Court reached the conclusion that there was substantial evidence, which, if credited, justified the jury in finding the defendant guilty. In view of this circumstance, the Court submitted the case to the jury. In so doing, the Court was guided by the rule recently enunciated by the United States Court of Appeals for the District of Columbia in Curley v. United States, 160 F.2d 229. In that case the pertinent principle was formulated as follows by Mr. Justice Prettyman:

"The true rule, therefore, is that a trial judge, in passing upon a motion for directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt."

On a motion for judgment of acquittal (previously known as a motion for a directed verdict),[1] the Court is required to approach the evidence from a standpoint most favorable to the Government, and to assume the truth of the evidence adduced in support of the indictment. If on this basis there is substantial evidence justifying an inference of guilt, irrespective of any countervailing testimony that may have been introduced, the motion must be denied and the issues must be submitted to the jury for its determination.

The Supreme Court has summarized these principles as follows in Pierce v. United States, 252 U.S. 239, 251-252, 40 S.Ct. 205, 210, 64 L.Ed. 542:

"There being substantial evidence in support of the charges, the court would have erred if it had peremptorily directed an acquittal upon any of the counts. The question whether the effect of the evidence was such as to overcome any reasonable doubt of guilt was for the jury, not the court, to decide."

■ It has been urged that the same considerations are applicable to a motion for a new trial. This corollary by no means follows. The rule applies to a motion for a judgment notwithstanding the verdict, because such a motion should be granted only if the Court on further reflection reaches the conclusion that it should have directed a judgment of acquittal instead of submitting the case to the jury. On the other hand, on a motion for a new trial on the ground that the verdict is against the weight of the evidence, the power of the Court is much broader. On such an application, the Court may weigh the evidence and consider the credibility of witnesses. If the Court reaches the conclusion that the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted, the verdict may be set aside and a new trial granted. Naturally, this authority should be exercised sparingly and with caution. It should be invoked

[1] Rule 29(a) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. following section 687.

only in exceptional cases in which the evidence preponderates heavily against the verdict.

There is no incongruity or inconsistency in requiring the Court to submit the issues to the jury if there is substantial evidence to support a verdict of guilty, and at the same time in empowering it to set the verdict aside if it is deemed contrary to the weight of evidence. In directing a judgment of acquittal, the Court makes a final disposition of the case. On the other hand, in setting the verdict aside the Court merely grants a new trial and submits the issues for determination by another jury. It is appropriate that in the latter instance, the Court should have wide discretion in the interest of justice.

The authorities sustain the foregoing views. The broad power of a common law judge to grant a new trial on the ground that the verdict is contrary to the weight of evidence or contrary to the evidence, was recognized in England at an early date, The King v. Mewbey, 6 Term Reports 620; Bright v. Eynon, 1 Burr. 393. This rule has long prevailed in the District of Columbia. Thus, in Lloyd v. Scott, Fed.Cas.No.8434, 4 Cranch C.C. 206, 218, decided in 1832, Circuit Judge Cranch set a verdict aside as against the weight of the evidence and granted a new trial. He discussed the authorities at length and made the following remarks (4 Cranch at page 218):

"It is objected, that there was evidence on both sides, and therefore the verdict cannot be said to be against evidence; and if the verdict was merely against the weight of evidence, the Court cannot grant a new trial.

"But there is no rule of law or practice, which forbids a court to grant a new trial where the verdict is against the weight of the evidence. On the contrary, there have been many new trials granted on that ground."

Similarly, in the case of In re Hoover's Will, 7 Mackey, D. C., 541, 550, the Court made the following statement:

"The power of the court to grant a new trial on the ground that the verdict is against the evidence or against the weight of the evidence, is one which has been exercised by the courts of Maryland from time out of mind, and it has also been exercised by the courts of this District ever since its separate organization, and it is too late now to bring it in question."

In a case which originated in the District of Columbia, the Supreme Court of the United States upheld the authority of a trial judge to set a verdict aside on the ground that it is contrary to the weight of evidence, Metropolitan Railroad Co. v. Moore, 121 U.S. 558, 570, 7 S.Ct. 1334, 1340, 30 L.Ed. 1022. In that case the Court stated:

"So, upon the whole evidence in the case, the testimony in support of the cause of action, or of the defense, may be so slight, although competent in law, or the preponderance against it may be so convincing, that a verdict may be seen to be plainly unreasonable and unjust. In many cases it might be the duty of the court to withdraw the the case from the jury, or to direct a verdict in a particular way; and yet in others, where it would be proper to submit the case to the jury, it might become its duty to set aside the verdict and grant a new trial."

This doctrine has been recognized by many other Federal courts. Thus in the Circuit Court of Appeals for the Fourth Circuit, Judge Parker, in Garrison v. United States, 62 F.2d 41, 42, summarized these principles in the following manner:

"There seems to be some confusion on the part of counsel as to the difference between the duty to direct a verdict and the duty to grant a new trial after verdict; and the contention is frequently made that the judge should direct a verdict whenever the evidence is such that he would be justified in setting the verdict aside. The distinction, however, is clear. Where there is substantial evidence in support of plaintiff's case, the judge may not direct a verdict against him, even though he may not believe his evidence or may think that the weight of the evidence is on the other side; for, under the constitutional guaranty of trial by jury, it is for the jury to weigh the evidence and pass upon its credibility. He may, however, set aside a verdict supported by substantial evidence where in his opinion

it is contrary to the clear weight of the evidence, or is based upon evidence which is false; for, even though the evidence be sufficient to preclude the direction of a verdict, it is still his duty to exercise his power over the proceedings before him to prevent a miscarriage of justice."

In a later case, Ætna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350, 352, 353, 354, Judge Parker stated:

" * * * it is the duty of the judge to set aside the verdict and grant a new trial, if he is of opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict. The exercise of this power is not in derogation of the right of trial by jury but is one of the historic safeguards of that right.

\* \* \* \* \* \*

"To the federal trial judge, the law gives ample power to see that justice is done in causes pending before him; and the responsibility attendant upon such power is his in full measure. While according due respect to the findings of the jury, he should not hesitate to set aside their verdict and grant a new trial in any case where the ends of justice so require."

In the Sixth Circuit, Judge Lurton, later an Associate Justice of the Supreme Court, reached the same conclusion. After reviewing numerous authorities dealing with this topic, he recapitulated the applicable principles as follows, in Mt. Adams & E. P. Inclined Ry. Co. v. Lowery, 74 F. 463, 470, 472:

"The court may, and often should, set aside a verdict, when clearly against the weight of evidence, where it would not be justified in directing a verdict. * * * Many cases occur, in the history of nisi prius trials, where a new trial ought to be granted because the verdict is clearly against the weight of evidence, when it would have been erroneous to have directed a verdict in the first instance. Still there is no absolute rule justifying a new trial merely because the trial judge would, upon weighing the evidence, have found

contrary to the view of the jury. He must exercise a sound judicial discretion,—a discretion not reviewable in appellate courts of the United States upon writ of error.

\* \* \* \* \* \*

"The rule in the American courts seems to be that, if the verdict be clearly and manifestly against the evidence or the weight of evidence, a new trial should be granted."

In the same Circuit, Judge Denison, in Bain v. United States, 6 Cir., 262 F. 664, 666, made the following succinct comment:

"It is, of course, within the discretion of a trial judge to grant a new trial, if he thinks that, in a civil case, the jury disregarded the preponderance of evidence, or that, in a criminal case, the evidence lacks that degree of persuasiveness without which there should be no conviction; * * *."

Some very illuminating observations as to the power of a Federal judge in such matters is found in an opinion of the Circuit Court of Appeals for the Seventh Circuit, in Applebaum v. United States, 274 F. 43, 46:

"If a defendant asks that a verdict be set aside because it is not supported by the required weight of evidence, his motion is addressed to the discretion of the trial judge. In order properly to exercise that discretion it is manifest that the trial judge, as well as the jurors, should attentively consider and weigh the evidence as it is being introduced, because in that respect *he is sitting as the thirteenth juror*.[2] It is the exclusive and unassignable function of the trial judge to grant or refuse a new trial in cases of conflicting evidence."

█ The foregoing discussion inescapably leads to the conclusion that a judge may set a verdict aside as contrary to the weight of evidence and grant a new trial, even if there was substantial evidence requiring him to submit the issues to the determination of a jury.

We may now proceed to a consideration of the merits of the motion. The defendant Robinson and his co-defendants, McMaster and Campbell, are sailors in the United

---

2 Emphasis supplied.

States Navy, and at the time of the commission of the offense charged in the indictment, were stationed at Dahlgren, Virginia. On that evening they came into Washington on a pass, intending to return early on the following morning. Robinson planned to visit his wife, who was living in Washington, while the other two defendants, who were unmarried, apparently came to the city purely on a frolic. On reaching Washington, they boarded a taxicab. Apparently McMaster directed the driver to follow a route that brought them into Maryland. The driver was then overpowered by one or more of his passengers. The taxicab was taken away from him, and was driven by McMaster back to Washington, with the defendant and Campbell as passengers. After abandoning the cab, the three men boarded another taxicab, driven by one Puryear. After the second cab proceeded some distance, McMaster robbed Puryear of his money at the point of a gun and took over the control of the vehicle. Subsequently, Puryear was turned out of the cab. During the perpetration of the robbery, two firearms—a .45 calibre automatic pistol and a .32 calibre revolver—were pointed at Puryear.

Robinson, McMaster and Campbell were jointly indicted on a charge of robbing Puryear. McMaster and Campbell pleaded guilty. Robinson pleaded not guilty and was convicted by a jury. He now moves for a new trial.

Robinson's defense is that the robbery was committed solely by McMaster and Campbell; that he did not participate in the crime in any way; that he did not know that McMaster and Campbell had planned to perpetrate the offense; and that he protested against their action and endeavored to leave the vehicle, but was coerced into remaining with his two companions. Standing alone, these assertions might perhaps encounter skepticism. At first blush they seem to tax one's credulity. One must pause, however, because of the impressive fact that McMaster and Campbell testified as defense witnesses and fully corroborated Robinson's contention. They completely exculpated him. They stated that the pistol which was pointed at Puryear was held by McMaster and the re-

volver by Campbell. They further testified that the leading part in the robbery was taken by McMaster, who was arrested together with Campbell. When they were apprehended the two firearms were found on their persons. No firearm was found in the possession of Robinson, who was taken into custody separately a few hours later.

If McMaster and Campbell are to be believed, Robinson is not guilty. No motive is discernible on their part falsely to exculpate Robinson. While apparently McMaster and Campbell were friends, the evidence tends to indicate that Robinson was only a casual acquaintance of the other two defendants. It is not perceived that they had such an interest in him as would lead them to give false testimony for the purpose of saving him. It would seem that their natural impulse would have been to make Robinson share their guilt and to testify for the Government in the hope of ameliorating their own punishment, particularly as they have not as yet been sentenced. While instances are known of a convicted person falsely exonerating a confederate, if some private purpose is served by so doing, nevertheless, it can hardly be lightly assumed that perjury was committed on this point by McMaster and Campbell. No object on their part for pursuing this course is apparent. Moreover, their testimony seemed contrary to their own best interests.

The principal evidence against Robinson is Puryear's testimony that while McMaster was robbing him, guns were pointed at him by Robinson and Campbell. All three defendants, however, contradicted Puryear and stated that the two guns were held by McMaster and Campbell and not by Robinson and Campbell. All three appear to be of the same build and each wore a Naval uniform. The robbery occurred in the evening. All three passengers were strangers to Puryear. He obviously underwent a severe nervous strain. At the time he was laboring under great excitement and manifestly was terror-stricken. He saw two firearms pointed at him. Under the circumstances, he could easily be mistaken as to which two of the three sailors held the weapons. The defendant was never con-

fronted with Puryear and apparently was never identified by the latter except on the witness stand. Moreover, Puryear was not entirely positive in his testimony on this point, but expressed some doubt. It is significant that the driver of the first taxicab, when called as a rebuttal witness for the Government, testified that when he was robbed, the guns were held by Campbell and McMaster.

Another item of evidence that weighs against the defendant is a statement made by him to the police officers after his arrest to the effect that while he had no participation in the offense, he accepted $2 from his companions after the crime was committed. He stated, however, that he did so with reluctance and only after the money was practically forced on him. If he acted in fact under coercion, as all the three sailors contend, the significance of this item of evidence completely vanishes.

Puryear stated that during the robbery he pleaded with the sailors for his safety and received the reply, "It all depends on you." On his direct examination, he said that these words were spoken by Robinson. On cross-examination, however, he changed his position and stated that he did not know which of the three had made that statement.

When he was arrested, there was found on the defendant's person some ammunition for a .45 Colt automatic pistol. There is no doubt that this is a suspicious circumstance. Robinson's explanation is that he and other sailors at Dahlgren were in the habit of purchasing ammunition for use at target practice. He stated that they were permitted to borrow Naval firearms from time to time for that purpose, provided they supplied their own ammunition. He stated that before leaving Dahlgren for Washington, he overlooked putting the ammunition back in his locker.

The strongest circumstance against the defendant is the fact that after the first robbery was perpetrated, he remained with his companions instead of making his departure. His explanation is that he was coerced by the other two men, each of whom had a gun, and that although he asked to be allowed to leave, permission was refused him. His two companions emphatically corroborate his contention in this regard, as in all other respects. In fact, Robinson claims that he boarded Puryear's cab in an effort to escape, but that McMaster and Campbell immediately followed him into it.

Clearly there was a prima facie case against Robinson. The testimony of McMaster and Campbell in his favor, however, far outweighs the somewhat dubious and conjectural evidence against him. In the light of these considerations, it is the view of the court that the verdict is contrary to the weight of evidence and should not be permitted to stand. This is a case in which circumstances may have led to a miscarriage of justice that should be corrected by granting a new trial.

Motion to set the verdict aside and for a new trial granted.