**UNITED STATES of America**

v.

**BEACON MUSICAL INSTRUMENT COMPANY, Joseph C. Selig, Myron J. Segal.**

**Cr. No. 53-216.**

United States District Court
D. Massachusetts.

Oct. 20, 1955.

Anthony Julian, U. S. Atty., Arlyne F. Hassett, Asst. U. S. Atty., for plaintiff.

Charles O. Monahan, Boston, Mass., for defendants.

McCARTHY, District Judge.

The defendant corporation and the individual defendants were charged in a sixteen count indictment with knowingly presenting false and fraudulent claims to the United States Veterans Administration in the form of certified vouchers knowing that the education and training had not been furnished to the veterans as claimed. The defendant Segal pleaded guilty prior to the trial.

The corporate defendant and Selig were convicted by jury. At the close of

the government's evidence a motion for judgment of acquittal by Selig was taken under advisement. This motion was renewed by the defendant after conviction, who asks in the alternative for a new trial. Rule 29(b), Federal Rules of Criminal Procedure, 18 U.S.C.A. The company moved for a new trial.

■ It is the considered judgment of this Court that the verdict against the Beacon Musical Instrument Company should not be set aside. This corporation was responsible for the acts and the knowledge of its agent Segal, and there was substantial evidence that he, with full knowledge that training had not been furnished to veterans, intentionally falsified attendance records, and carried the falsification into the vouchers which were submitted to the Veterans Administration for payment.

■ The Court is denying the motion for judgment of acquittal of the defendant Selig. On analysis of the evidence most favorable to the government, giving the government the benefit of all the inferences which may be reasonably drawn therefrom, and giving full effect to the right of the jury to weigh the evidence and draw justifiable inferences, this Court is not in a position to say that a reasonable mind could not fairly conclude guilt beyond a reasonable doubt. In making this statement the Court is not considering conflicting evidence, the denials of the defendant, and the misconduct of the government's witness Segal.

"* * * In passing upon a motion for a new trial, a different test is applied than on a motion for judgment of acquittal. If the verdict is contrary to the weight of the evidence and a miscarriage of justice may have resulted, a new trial may be granted, United States v. Robinson [D.C., 71 F.Supp. 9], supra; the weight of the evidence must support the verdict as to the crime pronounced * * *." United States v. Kelly, D.C.D.C., 119 F.Supp. 217, 220.

■ The most important question is whether, as the Assistant United States Attorney has argued, the defendant Selig had knowledge of the falsity of the vouchers. This knowledge might be proved by direct testimony or by facts and circumstances consistent with guilt and inconsistent with every reasonable hypothesis of innocence of the crime for which Selig was convicted.

■ After mature deliberation the Court concludes that the evidence did not establish the material element of knowledge. First, with respect to the testimony of Segal who pleaded guilty to the crime prior to the trial, and upon whose testimony much of the case depended. He stated that he saw Selig daily on the premises, either in that portion devoted to the school, or "in the store". (R. p. 111.) He said that he talked to Selig approximately once a month about "what was going on in the school" (R. p. 114); that school mail was delivered to Selig's office before being brought to him (Segal); that he reported to Selig a basic drop in attendance and that there were so few students it was impossible to conduct classes at times (R. p. 121). It is also clear from the evidence that when Segal said that he made these reports to Selig his immediate superior was Mr. Freeman and it is admitted Mr. Freeman was in charge of the school program and that Mr. Segal was working under his direction.

It is inescapably clear, therefore, that this testimony is hardly conclusive of guilt and is certainly clearly consistent with the theory of innocence on Selig's part. Giving the testimony of Segal full force there is an established belief that Selig was an officer of the school and was familiar with its operation, that he was about on the premises, that he knew there was a basic drop in attendance and that Segal, the registrar, had not reflected this fact in the attendance records. It does not establish, however, that Selig knew that the false attendance records were not corrected, or that Segal carried the falsification into the vouchers sent to

the Veterans Administration for payment. There is nothing in Segal's testimony which would indicate that he had given any information to Selig for the latter to discover that Segal, who was also on the teaching staff of the school, was billing the school over a lengthy period of time for classes which he, Segal, had never conducted and for private lessons that he had never given.

The witness Keating, a contract officer employed by the Veterans Administration, testified that Selig negotiated the Beacon School's contract, and that Selig was notified that the school was overpaid on one occasion because the Veterans Administration was charged more for veterans than non-veterans were paying.

The witness Sexton, Veterans Administration auditor, told the defendant Selig that the attendance records of the school did not appear to support the tuition charges and were incorrect (R. p. 85). The witnesses Keating, DeCapot, Parry and Sullivan testified that on several days, no classes were held during what were purportedly school hours.

Viewing the evidence as a whole, there is a picture of a minority stockholder of a corporation who bore the title of manager of the school of instrumental music, but the bulk of whose activities were devoted to sales activities for the instrument store. Another held the position of educational director of the school. A third person held the position of registrar of the school. The defendant Selig left much of the management of the school to the educational director and the registrar—so much so that the latter, whose income depended in great part upon remuneration for giving private instruction to students, falsified attendance records, charged the school for lessons that he had never given, and falsified vouchers submitted to the Veterans Administration for payment. Segal testified that he had told Selig there had been

a drop in attendance which was not reflected on the attendance records and that Selig said to him he would take the matter up with Freeman, the educational director, and that Segal should carry on as he had been doing. This was denied by Selig. Upon the assumption that this conversation took place, one could not reasonably conclude that Segal would continue falsifying records of attendance or carry on with his duties as registrar.

One could contend, therefore, that there is a picture of carelessness on the part of Selig who should have checked the activities of Freeman and Segal more often, in the light of the fact that Segal admittedly did not keep attendance records properly.

Upon the assumption that this is the picture, there is carelessness on the part of Selig. That, however, does not furnish the weight of evidence essential in a criminal case for a jury to find beyond a reasonable doubt that Selig had a "clear conception of the falsity of the claim" made to the Veterans Administration. There was, moreover, the testimony of Freeman, Selig himself, and a number of character witnesses to consider. Add to this the fact the activities of this school represented a small percentage of the total business of the Beacon Musical Instrument Company, the fact that Selig's stockholder's interest was approximately a little over ten per cent of the total stock issued, and the fact that his activities were devoted largely to sales production and contacts with organizations purchasing musical instruments. All of these bear upon the question whether or not Selig had a certain clear perception of the falsity of the claim made to the Veterans Administration.

It is the Court's considered judgment that the defendant Selig should be granted a new trial, although under the decisions of our courts the allowance of a motion for judgment of acquittal would not be justified.