UNITED STATES of America

v.

Michael J. PEPE.

Cr. A. No. 1417.

United States District Court
D. Delaware.

Oct. 11, 1962.

Stanley C. Lowicki, Asst. U. S. Atty., Wilmington, Del., for the United States.

Robert C. O'Hora and John P. Daley, Wilmington, Del., for defendant.

LAYTON, District Judge.

On January 12, 1962, Michael J. Pepe was charged with (1) engaging in receiving wagers for or on behalf of an unknown person engaging in the business of accepting wagers, and wilfully failing to pay the special wagering occupational tax, in violation of Title 26 U.S.C. § 4411, and § 7203, (2) wilfully failing to register, contrary to Title 26 U.S.C. § 4412 and § 7203, and (3) having failed to register, wilfully having failed to pay the ten percent excise tax levied on wagers received by him, contrary to 26 U.S.C. § 4401 and § 7203. All three counts are misdemeanors.

Trial was held on February 15 and 16, 1962. At the close of the government's evidence, defendant made no motions. At the close of the defendant's case, defendant moved for a judgment of acquittal, which was denied by the Court. The jury returned a verdict of guilty on all three counts.

On or about February 26, 1962, defendant filed a motion for judgment of acquittal, pursuant to Federal Rules of Criminal Procedure, Rule 29, 18 U.S. C.A., or in the alternative a new trial, pursuant to Rule 33, Federal Rules of Criminal Procedure, on the ground that the evidence was insufficient to prove the element of wilfulness required by each count and that the verdict on each count as to wilfulness was against the weight of the evidence.

■ The test applicable to a motion for judgment of acquittal is somewhat different from that applicable to a motion for new trial. In the former, the Court scrutinizes the evidence from the point of view most favorable to the government and assumes the truth thereof. If there is substantial evidence justifying an inference of guilt, irrespective of the evidence adduced by the defendant, the Court must deny the motion. In the latter, where the ground is that the verdict is contrary to the weight of the evidence, the Court weighs the evidence of both sides, considers the credibility of the witnesses and, if the verdict is against the weight of the evidence, a new trial must be granted. United States v. Robinson, 71 F.Supp. 9 (D.C.D.C.).

■ The defendant did not deny that he accepted nine bets on five different days. Nor did he deny that he had no $50 wagering stamp valid at the time as required by law. His defense was that he had a stamp and did not realize that the period covered by the stamp had expired. Therefore, he contends, his acts, though illegal, were not wilful as required in order to convict under 26 U.S.C.A. § 7203. In order for a criminal act to be wilful, it must not only be committed deliberately and knowingly but with a bad motive or evil intent. U. S. v. Palermo (3rd Cir.Ct.), 259 F.2d 872. Simply stated, in order for the government to convict here, it must prove beyond a reasonable doubt that this defendant deliberately committed the specified violations with the intention of getting away with it.

■ Inasmuch as the offenses charged here are misdemeanors, the government is not held to such an exacting burden of proof as if there were felonies involved. Thus, in Spies v. United States, 317 U.S. 492, 497, 63 S.Ct. 364, 367, 87 L.Ed. 418 the Supreme Court of the United States had this to say:

"The difference between willful failure to pay a tax when due, which is made a misdemeanor, and willful attempt to defeat and evade one, which is made a felony, is not easy to detect or define. Both must be willful, and willful, as we have said, is a word of many meanings, its construction often being influenced by its context. United States v. Murdock, 290 U.S. 389 [54 S.Ct. 223, 78 L.Ed. 381]. It may well mean something more as applied to nonpayment of a tax when applied to failure to make a return. Mere voluntary and purposeful, as distinguished from accidental, omission to make a timely return might meet the test of willfulness. * * * We would expect willfulness in such a case to include some element of evil motive and want of justification."

\* \* \* \* \* \*

"We think that in employing the terminology of attempt to embrace the gravest of offenses against the revenues, Congress intended some willful commission in addition to the willful omissions that make up the list of misdemeanors. Willful but passive neglect of the statutory duty may constitute the lesser offense, but to combine with it a willful and positive attempt to evade tax in any manner or to defeat it by any means lifts the offense to the degree of felony. * * *

"By way of illustration, and not by way of limitation, we would think affirmative willful attempt may be inferred from conduct such as keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or conceal."

With these principles in mind, let us examine the record insofar as it concerns defendant's motions for judgment of acquittal as to Counts I, II and III.

 Count I charges wilful failure to pay the $50 occupational stamp fee. Here, the agent testified that when he arrested defendant, he (Pepe) admitted that his stamp had expired. For the purposes of a motion for acquittal, I must accept this as true. Defendant also admitted receiving nine bets on five days. Since he admitted his stamp had expired, inferentially, he was admitting that he had knowingly failed to renew it for a period of five months. This substantial lapse of time would bear heavily on whether or not defendant's failure was wilful. Moreover, there was a whole series of violations. The business was conducted back of a false front. Obviously, this constitutes substantial evidence to justify an inference of guilt. The motion is denied as to Count I.

Count II charges that defendant wilfully failed to register and make application for the gambling stamp. Accepting the evidence most favorable to the government, defendant admitted knowingly not renewing his stamp (by registering, making application for, and purchasing a stamp) for a period of five months during which he admitted operating his gambling business. There is definite evidence of the nine bets received in December and of the operation behind a false front. Again the lapse of five months would weigh heavily against his contention that his omission was not wilful. There is, in my judgment, substantial evidence justifying an inference of guilt. This motion is denied.

 Count III charges that the defendant wilfully failed to pay the 10% excise tax due from any bookie who had failed to register, apply for and purchase the $50 gambling stamp. Defendant's admission to the Federal agent that he knew his gambling stamp had expired is not a factor here. In this instance we must be satisfied that the defendant knew that his failure to register, apply for and buy the $50 gambling stamp automatically made him liable to pay over to the government 10% of all wagers handled by him and that his failure to pay the 10% excise tax was wilful. Again we consider only the evidence most favorable to the government. At page 107 of the record, defendant admitted he knew about the 10% excise tax. Thus, he inferentially conceded he had consistently failed to pay the government 10% of all wagers handled by him for the past five months. He operated behind a false store front. He was an associate of gamblers and had been convicted a number of times of gambling under State Policy Writing laws, indicating the likelihood of his having knowledge of the gambling laws generally. There is substantial evidence in the record justifying an inference of guilt. The motion is denied.

 We now proceed to a consideration of the motions for new trial as to all three counts. In so doing, we will weigh the evidence produced by both parties, assess the credibility of the witnesses and decide whether or not the verdicts were contrary to the weight of the evidence, bearing in mind that such a motion should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict. United States v. Robinson, 71 F. Supp. 9, at page 10–11.

 As to Counts I and II, we have the evidence of the federal arresting officer, Kimmey, that defendant admitted

he knew his stamp had expired on June 30th and, inferentially, that he knew he had failed to register, apply for and purchase the new stamp for five months, during which he had consistently operated as a bookie behind a store having a false front. We have in contradiction defendant's evidence that he knew nothing about the expiration of his stamp or the necessity for registering, applying for and purchasing a new one because his brother had always taken care of that for him. Opposed to this defense is the contrary evidence of a trained federal officer who, as far as appears from the record, held no grudge against the defendant. In favor of the defense is the concededly loose practice whereby the Federal Bureau of Internal Revenue will permit anyone to pick up a stamp application, take it home, fill it out in someone else's name and then, by carrying the application to the office and paying $50, a stamp will be mailed to the person in whose name the application is filled out. It seems to me that the contentions of the government and the defendant properly presented a case for a jury to resolve. The main question was one of credibility. If the jury believed the government's version, the motion should not be granted. Apparently, it did. In my opinion, the verdicts were not against the weight of the evidence. The motions for new trial as to Counts I and II are denied.

■ Finally, was the verdict of guilty of failing to pay the 10% excise tax against the weight of the evidence? We have defendant's admission that he had information about the 10% excise feature of the gambling law. But we do not accept this admission here in a light most favorable to the government. The admission was equivocal. It might have meant defendant was aware that a banker had to pay the 10% excise tax, but not the bookie, which latter liability was in fact imposed by a subsequent amendment to § 4401. Certainly, the answer "yes" was not to a precise question.[1] And the correct answer to the bookie's liability is not easy to run down through the statutes, even for a lawyer. The only other means of charging knowledge of the 10% excise tax requirements was by newspaper notoriety and defendant's general background. A reading of the record at pages 77, 78 and 79, makes it doubtful just what sort of newspaper notoriety was given as to the 10% excise tax feature of the law. Also, it must be obvious that the very form (Form C 11) which an applicant for a wagering stamp fills out is confusingly worded insofar as the 10% excise tax is concerned. Par. (1) reads:

> "Who Must File. Every person who is liable for the 10 percent excise tax imposed by Sec. 4401 and every person who is engaged in receiving wagers * * *."

This language is capable of the meaning that a person liable for the 10% excise tax is not one who is engaged in receiving wagers, a bookie.

Despite the weaknesses of the government case with respect to Count III, I am of the opinion that the government presented a case for the jury. The admission that defendant had "information as to the 10%" could be understood as an admission that he was aware that, because of his failure to register, apply for and purchase a $50 wagering stamp, he became liable for 10% of all wagers received by him since July 1st and that he had deliberately and knowingly accepted wagers for the past five months behind a false store front. There had been several newspaper articles in the local press giving some notoriety to the 10% excise tax feature of the law. Moreover, as an intimate of gamblers there

---

1. Q. "* * * You have information about the gambling laws?"
 A. "As far as the 10%?"
 Q. "You have information as far as the ten percent?"
 A. "Yes."
 Q. "You know about that?"
 A. "Yes."

is the probability of his having heard it discussed. The verdict was not against the weight of the evidence. Accordingly, the motion for new trial is denied as to Count III.