UNITED STATES of America

v.

William T. SMITH.

Crim. No. 84–00156–04.

United States District Court,
M.D. Pennsylvania.

Oct. 17, 1985.

James J. West, Asst. U.S. Atty., Harrisburg, Pa., for U.S.

John Rogers Carroll, Thomas C. Carroll, Carroll & Carroll, Philadelphia, Pa., for William T. Smith.

## OPINION

MUIR, District Judge.

I. Introduction and Procedural History.

Currently pending before this Court is William T. Smith's motion for judgment of acquittal and in the alternative for a new trial. On October 22, 1984, a sixteen count indictment was returned against two corpo-

rate and five individual Defendants including William T. Smith. Smith's trial began on March 26, 1985 and ended on June 24, 1985 when the jury returned a verdict of guilty on counts 1, 2, 3, 7, 9, and 12 through 15. Count 1 charged conspiracy; counts 2, 3, and 7 charged mail fraud under 18 U.S.C. § 1341; counts 9 and 12 through 15 charged interstate transportation in aid of racketeering under 18 U.S.C. § 1952(a)(3).

## II. Evidence Regarding Multiple Conspiracies.

Smith argues that he is entitled to a judgment of acquittal or a new trial because the Government did not prove a single conspiracy as charged in count 1 of the indictment but instead it proved several smaller conspiracies. He also contends that there is a variance between the events charged in the indictment and the proof at trial which was prejudicial to him.

The Court must grant a motion for judgment of acquittal "... if the evidence is insufficient to sustain a conviction" of the offenses charged in the indictment, Rule 29(a) Fed.R.Crim.P. The standard of review is whether, viewing the evidence in the light most favorable to the Government, the jury's verdict is supported by substantial evidence. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), *United States v. Delerme*, 457 F.2d 156, 160 (3d Cir.1972). The issue on a motion for acquittal is whether this Court has reason to believe that there was sufficient evidence on which reasonable persons could find Smith guilty beyond a reasonable doubt; *United States v. Pratt*, 429 F.2d 690 (3d Cir.1970), *United States v. Leach*, 427 F.2d 1107 (1st Cir. 1970).

In considering a motion for a new trial, "The Court ... may grant a new trial ... if required in the interest of justice." Rule 33 Fed.R.Crim.P. Unlike a motion for judgment of acquittal, the motion for new trial is based upon the weight of the evidence, and the Court may weigh evidence and consider the credibility of witnesses. *United States v. Pepe*, 209 F.Supp. 592, 595 (D.Del.1962), *aff'd per curiam*, 339 F.2d 264 (3d Cir.1964). The motion for new trial is addressed to the discretion of the Court and the power to grant a new trial on the ground that the verdict is against the weight of the evidence should only be invoked in exceptional cases. Wright, Federal Practice & Procedure: Criminal 2d § 553.

Smith contends that the evidence showed that there were three separate conspiracies embracing Allegheny County, the City of Pittsburgh, and the Commonwealth of Pennsylvania and that Smith was not a member of the two conspiracies involving Allegheny County and the City of Pittsburgh. Smith alleges that the evidence showed three separate mail fraud conspiracies rather than the one conspiracy described in Count 1 of the indictment and also showed three separate conspiracies to violate 18 U.S.C. § 1952 which prohibits interstate transportation in aid of racketeering, rather than the single conspiracy charged in count 1 of the indictment. The evidence was that Smith and others attempted as part of one overall scheme to influence state and local public officials to award FICA recovery contracts to a California corporation, XET, Ltd. d/b/a/ CTA Ltd., and that Smith was working for and on behalf of the corporation with John Torquato who was the moving force behind the scheme. Torquato testified that Smith knew about and assisted Torquato's activities in bribing public officials, that bribes were paid to and goods and services rendered to members of the Scanlon family, Robert Rade Stone, President of the Pittsburgh City Council, and other officials in connection with said scheme. Smith knew that stock in the corporation known as COM–MAX was being delivered to state, city, and county officials as bribes.

Smith was aware of the dealings between the individual Defendants and public officials involved in various FICA recovery contracts. The State Director of Social Security for Public Employees, David Herbert, approved all three contracts and received stock in ,COM–MAX Corporation. James Scanlon, an Allegheny County official, recommended CTA to the City of Pitts-

burgh and to the State of Pennsylvania and received free travel and promises of employment for himself and family members. James Scanlon was also instrumental in introducing John Torquato and Defendant Smith to Eugene Scanlon, his brother and Senate Minority leader of the Senate of the Commonwealth of Pennsylvania, who assisted in passage of legislation to facilitate the FICA recovery by CTA on behalf of Pennsylvania school entities.

■ Torquato testified that he discussed with Smith that COM–MAX stock or stock options had been delivered to David Herbert, the above-mentioned State Director, Robert Rade Stone, President of the Pittsburgh City Council, Scott R. O'Donnell, Chief Clerk to the Commissioners of Allegheny County, and Ronald Schmeizer, Director of Finance of the City of Pittsburgh. It would appear that these public officials were told by Torquato that the money from the state, county, and city FICA recoveries would be used to fund and enhance the COM–MAX Corporation. When there were rumors of an investigation, Defendant Smith created yet another company known as Application Software Systems to conceal the prior delivery of COM–MAX stock to those public officials and to make it more difficult to establish a connection between COM–MAX and CTA. Smith formed this company with full knowledge of its purpose in furthering the single conspiracy. The evidence introduced during Smith's trial showed beyond a reasonable doubt that Smith was guilty of involvement in one conspiracy involving the awarding of FICA recovery contracts to CTA, Ltd.

■ Smith argues that there is a variance between the events as charged in the indictment and the proof offered at trial which prejudices a substantial right of Smith and cites *United States v. Camiel*, 689 F.2d 31 (3d Cir.1982) as authority for this argument. *Camiel* is distinguishable from this case. In *Camiel*, the Court held that the evidence showed the existence of two or perhaps even four distinct schemes to defraud, that the evidence was insufficient to support a finding of one scheme and entered a directed verdict of acquittal. The Court applied the doctrine set forth in

*Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) which held that in order for a trial judge to reverse a jury conviction in a mail fraud scheme case, (1) there must be a variance between the indictment and the proof and (2) the variance must prejudice some substantial right of the Defendant. The evidence presented during the Smith trial does not support the argument that there was a variance between the indictment and the proof. The evidence showed beyond a reasonable doubt that there was a single conspiracy; thus, there was no prejudicial variance between the facts set forth in the indictment and the proof at trial.

### III. The Court's Charge Regarding Single and Multiple Conspiracies.

Smith contends that he is entitled to a judgment of acquittal or a new trial because this Court's additional charge to the jury on June 14, 1985 violated Fed.R. Crim.P. 30 and was prejudicial to Smith.

On June 11 and 12, 1985, this Court ruled on counsels' requested points for charge. We informed counsel that we would cover Smith's point 30 and Smith's supplemental point 9 which involve single and separate conspiracies. Transcript, Volume 38, p. 5, and Volume 39, p. 3. Smith's point 30 is as follows:

> If you find that John R. Torquato, Jr. and others were involved in a separate conspiracy or conspiracies regarding the Allegheny County and City of Pittsburgh FICA recovery contracts in which the defendant, William Smith, was not a participant, then your verdict as to William Smith on the entire indictment must be not guilty. (authorities omitted)

Defendant Smith's supplemental point 9 is as follows:

> 1. The indictment alleges the existence of a conspiracy to commit mail fraud and, additionally, charges mail fraud itself. An essential element of both charges is that government prove beyond a reasonable doubt the existence of a single scheme to defraud and that the single scheme to defraud not be sub-

stantially different from the scheme charged in the indictment.

2. To convict on this aspect of the charges, each of the jurors must find that the government has proved beyond a reasonable doubt that the defendant participated in the same single scheme to defraud and the scheme to defraud in which the defendant is found to have participated is the same scheme as the fraudulent scheme alleged in the indictment. The defendant may not be convicted unless he was a willing, knowing and active participant in the particular scheme to defraud alleged in this indictment.

3. Unless the jury finds beyond a reasonable doubt that the government has proved the existence of a single scheme to defraud, as charged in the indictment, the defendant must be acquitted of the pertinent counts. (authorities omitted)

Counsel gave their closing arguments on June 12 and 13, 1985 and during those closings, no counsel raised the issue of multiple and single conspiracies. On June 13, 1985, this Court instructed the jury that the indictment charges a single scheme to defraud and Smith must have participated in such a scheme or one not substantially different, and that unless the single scheme had been proven, Smith must be acquitted of the pertinent counts. We instructed the jury as follows:

The indictment alleges the existence of a conspiracy to commit mail fraud, and additionally, charges mail fraud itself. An essential element of both charges is that the Government must prove beyond a reasonable doubt the existence of a single scheme to defraud as charged in the indictment.

A Defendant may not be convicted unless he was a willing, knowing and active participant in the particular scheme to defraud alleged in this indictment.

Unless the jury finds beyond a reasonable doubt that the Government has proved the existence of a single scheme to defraud, as charged in the indictment, the Defendant must be acquitted of the pertinent counts. The single scheme charged includes the obtaining of FICA recovery contracts from Allegheny County, the City of Pittsburgh and also the Commonwealth of Pennsylvania.

If you find that Mr. Torquato and others were involved in separate conspiracies concerning or regarding Allegheny County or City of Pittsburgh, or Pennsylvania School District FICA recovery contracts, and that the Defendant was not a participant in one or more of these separate conspiracies, then your verdict as to the Defendant on the entire indictment must be not guilty.

By separate conspiracy, I mean a conspiracy that has no connection with another conspiracy except for the fact that John Torquato, Jr., or one or more other individuals, played a role in both conspiracies.

You may, however, find that the Defendant participated in the conspiracy charged in the indictment even if that conspiracy encompassed three related subconspiracies involving different groups of individuals.

Transcript Volume 40 pp. 153–154.

At the conclusion of the charge, counsel for Smith took exception to the portion of the charge that defined separate conspiracies. Transcript Volume 40, p. 188. Smith's counsel propounded an instruction which he desired directed towards defining separate conspiracies but which in our view was defective. Because it was late in the day and it was inappropriate for the jury to start its deliberations at that time, we directed counsel to confer and attempt to agree upon adequate definitions of single and separate conspiracies for a supplemental instruction the following morning. Transcript Volume 40, p. 188–193.

On June 14, 1985, we conferred with all counsel and in the absence of an agreed instruction, we then gave the following new instruction to the jury on the issue of multiple conspiracies:

"THE COURT: At the end of the Court's instructions there are always requested changes, and we find that some of the requests that have been made do have merit.

We will give you some further instructions.

Yesterday, I talked very briefly about separate conspiracies. I'm going to ask you to disregard what was said then because we have an elaboration and a correction of it.

\* \* \* \* \* \*

A single conspiracy is one in which the Defendants and those with whom they are charged with conspiring share a common goal of the conspiracy set forth in the indictment. Separate conspiracies, although they may have common elements, common participants, common means, some common objectives, or other common factors, but which lack the critical element of common objectives of the conspiracy on the part of all of the participants, do not qualify as a single conspiracy.

\* \* \* \* \* \*

The gist of a criminal conspiracy may involve numerous transactions and the fact that conspirators individually or in groups perform different tasks in pursuing a common goal does not necessitate a finding of several conspiracies.

Even if a small group is at the heart of an unlawful agreement, others who knowingly participate with core members to achieve a common goal may be members of a single conspiracy.

Accordingly, you may find that a master conspiracy for the obtaining of FICA recovery contracts by a bribery and fraud existed and that more than one subsidiary scheme was involved. You should review the indictment and determine if the master conspiracy charged therein has been proven.

Transcript Vol. 41, pp. 34–36. Parenthetically, the transcript shows the use of the article "a" before "bribery and fraud". The Court is of the view that the article was never stated and that the transcript is in error.

■ Smith contends that the giving of the new instruction on June 14, 1985 violated Rule 30 of the Federal Rules of Criminal Procedure and that he was prejudiced by the new instruction. Rule 30 of the Feder-

al Rules of Criminal Procedure states that "The Court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury." Rule 30 requires the Court to inform counsel of its proposed action upon counsel's requested points for charge; it does not require the court to give counsel further information about the contents of the charge. Our instruction to the jury regarding conspiracy on June 14, 1985 was not a departure from the requirements of Rule 30. Even if giving the new instruction had violated Rule 30, failure to comply with the requirements of Rule 30 does not ipso facto mandate reversal, *Hamling v. United States*, 418 U.S. 87, 135, 94 S.Ct. 2887, 41 L.Ed.2d 87 (1974). The question is whether or not the charge in its entirety was fundamentally prejudicial to Smith. *United States v. Hartman*, 409 F.2d 198 (3d Cir.1969), *United States v. Wander*, 601 F.2d 1251 (3d Cir.1979).

Smith contends that he was prejudiced by the Court's giving of the new instruction on June 14, 1985 because Smith's counsel did not have the opportunity to know before his closing argument that an instruction would be given regarding single and multiple conspiracies. This is not a correct statement of what took place at trial. The concepts of single and multiple conspiracies had been raised by counsel for Smith himself in his proposed point # 30 and supplemental point # 9. The new instructions related to an issue counsel had been advised would be covered in the charge.

Smith also contends that he was prejudiced because the new instruction altered the Government's theory of the conspiracy such that the indictment failed to inform Smith of the nature of the charges against him. The new charge was not a change in the Government's theory that there was one conspiracy and that Smith was a participant in this conspiracy, but was an elaboration on the concept of single and multiple conspiracies.

There are additional reasons why the new instruction did not prejudice Defend-

ant Smith. First, the charge as a whole after the new instruction was given covered the area of conspiracy completely and was an accurate statement of the law. This Court's primary reason for giving the new instruction was to prevent jury confusion.

Second, it was defense counsel who took exception to the portion of the charge that addressed separate conspiracies and requested an additional instruction defining them. The Court concluded that there might be confusion on the part of the jury regarding separate conspiracies primarily as a result of Smith's counsel's exception. In an effort to avoid confusion on the part of the jury, the Court gave the new instruction on the issue of multiple conspiracies. Since Smith was not prejudiced in any way by our giving the new instruction, his request for a judgment of acquittal or for a new trial on this basis will be denied. In short, this issue about a defective charge on single and multiple conspiracies is, in my opinion, a cured Clupea harengus.

### IV. The Court's Charge Regarding Termination of the Conspiracy.

Smith argues that our refusal to give an instruction that the mail fraud objective of the alleged conspiracy ended June 22, 1984 and that the travel act objective of the conspiracy terminated with the last act of travel, June 7, 1984 entitles Smith to a new trial. Smith contends that "... it was error to allow the jury to find that the defendants participated in conspiratorial conduct after the principal object of conspiracy had terminated by the final mailing or act in furtherance of interstate travel." Smith's post-trial brief at unnumbered page 20. Smith relies on the case of *United States v. Oxman,* 740 F.2d 1298, 1304 (3d Cir.1984) to support his argument. In *Oxman* the Court held that a conspiracy to violate a substantive prohibition in a federal statute ends when the unlawful object has been accomplished. The conspiracy charged in the *Oxman* indictment ended in June of 1979. The Defendant in that case requested an instruction charging that the jury must have found that the Defendant's membership in the conspiracy terminated before June of 1979. The Court in *Oxman*

refused the requested instruction and gave a charge stating that the overt act must have occurred between November, 1976 and January 1981. In *Oxman,* the charge thus permitted the jury to find an overt act beyond the termination date of the conspiracy set forth in the indictment.

The facts of *United States v. Oxman* are significantly different from the facts in this case. The indictment in *United States v. Smith* alleges that the conspiracy began on or about January 1, 1983 and continued up to the date of the indictment which was October 22, 1984. The indictment in United States vs. Smith alleges continuing offenses which contemplate continual uses of the mails and facilities of interstate commerce up to the date of the indictment, whereas the *Oxman* case dealt with a conspiracy which had ended on a fixed date.

The charge proposed by Smith (Smith's supplemental point No. 2) was not given because it was not applicable to the facts of this case. A Court may properly refuse to submit to the jury a requested instruction which incorrectly states the law applicable to the case or would mislead the jury, *United States v. Alvarez,* 519 F.2d 1036 (3d Cir.1975), or which presents a theory not supported by the trial record, *United States v. Bertucci,* 333 F.2d 292 (3d Cir.1964). The indictment did not charge that the mail fraud objective of the alleged conspiracy ended on June 22, 1984 or that the travel act objective of the conspiracy ended on June 7, 1984; thus, Smith was not prejudiced by this Court's refusal to give his proposed supplemental instruction No. 2. This Court properly instructed the jury that

A conspiracy ends when its principal objective is accomplished, when it is abandoned, or when otherwise terminated by some affirmative act. Any agreement to conceal a completed crime made after a crime is committed does not—let me emphasize—does not extend the life of a conspiracy.

Therefore, I charge you that in the absence of an express initial agreement to conceal between the conspirators, you

may not find a Defendant guilty of a conspiracy from the mere fact that he agreed to conceal a completed crime or engaged in acts of concealment following the completion of the crime.

Now, that's a bit difficult and it's vital and I'm going to read it to you again. (The Court then repeats the instruction.) Transcript, Volume 40, p. 152. Smith's argument for a judgment of acquittal or for a new trial on the basis that we improperly instructed the jury regarding termination of a conspiracy is without merit.

## V. Sufficiency of the Evidence on the Substantive Counts.

The substantive counts of which Smith was found guilty are three mail fraud counts (Counts 2, 3, 7) and five counts of committing interstate transportation in aid of racketeering (Counts 9, 12, 13, 14, 15). Smith argues that there is insufficient evidence to support the guilty verdicts on these counts.

### a. The Mail Fraud Counts.

■ Count 2 of the indictment charges that Smith and other Defendants caused a letter to be sent from John Torquato to Defendant Smith in which Torquato describes a job on the Pennsylvania Municipal Retirement Board which David Herbert wished Smith and Torquato to obtain for him. Herbert was the State Director of Social Security for Public Employees and was the highest state official in Pennsylvania empowered to authorize FICA refunds. The testimony of Torquato, Herbert, and Kincaid indicated that Herbert was assisting CTA in obtaining FICA recovery contracts because Smith and Torquato had promised to obtain a better state job for him. The letter which is the subject of Count 2 of the indictment was clearly in furtherance of the conspiracy to influence public officials.

Count 3 of the indictment charges that Smith and other Defendants caused Janice Kincaid to send a letter to Smith containing a check for $1,000 on March 7, 1984 payable to the Republican State Committee of Pennsylvania. The evidence shows that the check was sent at the request of Smith to influence the awarding of the FICA recovery contract to CTA relating to the Pennsylvania school districts. Torquato testified that he had directed Kincaid to make the contribution from her own personal account at Smith's suggestion. Torquato later reimbursed Kincaid under the guise of a bonus. The jury could reasonably have found and we are persuaded that the mailing of this check was in furtherance of the conspiracy to influence public officials of which Smith was a participant.

Count 7 of the indictment charges that on June 22, 1984, Smith and other Defendants caused a letter to be sent from Torquato to Joseph Oravitz, Executive Director of the Pennsylvania School Board's Association, enclosing a draft of an opinion from the Chief Counsel to the Treasurer of the Commonwealth. The opinion indicated that CTA had an exclusive contract to recover overpaid FICA funds on behalf of all Commonwealth school entities. The evidence showed that Oravitz was the individual who would have notified the School Boards of the Commonwealth of the fact that CTA had been declared the exclusive FICA recovery agent for all Commonwealth School entities. The fact that this mailing occurred after the contract had been obtained from the Treasurer does not take the mailing beyond the scope of the scheme charged in the indictment as Smith argues. The scheme charged in the indictment had not terminated at the time the letter was sent. Further, the money to pay the bribes promised to the Treasurer of the Commonwealth had not been collected and was at least in part dependent on future FICA recoveries.

### b. The Travel Act Counts.

Smith argues that Count 9 of the indictment which charges the use of facilities of interstate commerce by Torquato to send a letter to Defendant Smith on December 16, 1983, is not proved because the record does not show any "overt act thereafter" in furtherance of the travel. 18 U.S.C. § 1952 states that

(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—. . .

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

Most of the overt acts listed in the indictment relating to the state contract for FICA recovery on behalf of the school entities occurred after the mailing of the letter on December 16, 1983. Torquato enclosed with the letter a $10,000 check for Smith's work on the Allegheny County contract and in the letter gave Smith advice concerning the best way to influence David Herbert. There was more than sufficient evidence for the guilty verdict on Count 9.

■■■■ Smith argues that the discrete instances of interstate travel by Torquato in violation of 18 U.S.C. § 1952 were not proven because no subsequent overt act was shown to have occurred in relationship to the travel involved in Counts 9, 12, 13, 14, and 15. Smith again raises the argument that this case involved several separate conspiracies and that Smith did not participate in the conspiracy involving Allegheny County. As we held earlier in this opinion, the evidence showed beyond a reasonable doubt the existence of one conspiracy corruptly to influence public officials to award FICA recovery contracts to CTA. Smith was involved in the entire conspiracy not only through his own acts but also through his knowledge of the activities of other participants and acts done knowingly in furtherance of the unlawful goal. It is not necessary that Smith have known all of his co-conspirators or that he have taken part in each and every activity of the conspiracy in order for him to have been convicted of involvement in the conspiracy. *United States v. Grassi*, 616 F.2d 1295, 1303 (5th Cir.1980), *cert. denied*, 449 U.S. 956, 101 S.Ct. 363, 66 L.Ed.2d 220 (1981). The essence of the crime of conspiracy is

the agreement to commit an unlawful act or acts, *United States v. Hutto*, 256 U.S. 524, 528, 41 S.Ct. 541, 543, 65 L.Ed. 1073 (1921), *United States v. Klein*, 515 F.2d 751, 753 (3d Cir.1975). The Government has met its burden of proving that Smith entered into an agreement with the specific intent to advance the unlawful goal of attaining for CTA FICA recovery contracts through bribery and fraud.

VI. The *Inadi* issue; Testimony of John R. Torquato, Jr. Regarding Conversations with Egidio Cerulli.

During the trial Smith objected to the introduction of testimony of John Torquato concerning Torquato's conversations with Egidio Cerulli on the grounds that the testimony violated the Confrontation Clause of the Sixth Amendment. *United States v. Inadi*, 748 F.2d 812 (3d Cir.1984), *cert. granted*, — U.S. ——, 105 S.Ct. 2653, 86 L.Ed.2d 271 (1985). The Government believed that Torquato was permitted to testify as to what he heard Cerulli say and this Court permitted the testimony. Smith now argues that the admission of this testimony into evidence was prejudicial and requires the granting of a new trial.

■■■■ This Court may grant a new trial to Smith "if required in the interest of justice." Rule 33 Fed.R.Crim.P. A motion for new trial should only be granted where the error at trial is prejudicial. *United States v. Smith*, 520 F.2d 1245 (8th Cir. 1975). "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Rule 52 Fed. R.Crim.P.

During the trial Torquato testified that he had contacted and then met with Mr. Cerulli, an official in the Democratic Party, to discuss the contract for FICA recovery in Westmoreland County. Torquato testified that Cerulli said ". . . he [Cerulli] would appreciate it if we would contribute to the Democrats". Transcript, Volume 4, pp. 73–74.

Smith contends that this testimony of Torquato violates the requirements of the Confrontation Clause as expressed in *Unit-*

*ed States v. Inadi,* 748 F.2d 821 (3d Cir. 1984), *cert. granted,* —— U.S. ——, 105 S.Ct. 2653, 86 L.Ed.2d 271 (1985). In *Inadi,* the Court held that the Government must show, as foundation for admitting out-of-court statements of a non-testifying co-conspirator under Fed.R.Ev. 801(d)(2)(E), that the co-conspirator is unavailable to testify in order for the testimony to comply with the Sixth Amendment's Confrontation Clause. The Confrontation Clause grants the accused the right to be confronted with the witnesses against him. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The holding in *Inadi* is based in part upon *Ohio v. Roberts,* 448 U.S. 56, 63–65, 100 S.Ct. 2531, 2537–39, 65 L.Ed.2d 597 (1980) in which the Supreme Court held that "In the usual case ... the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." 448 U.S. at 65, 100 S.Ct. at 2538.

 The Government argues that Torquato's testimony regarding his conversations with Cerulli was not hearsay because it was not offered to prove the truth of any matters asserted by Cerulli, but only to show the fact that the conversation and solicitation occurred between Cerulli and Torquato. *United States v. Bohr,* 581 F.2d 1294 (8th Cir.1978). Rule 801(d)(2)(E) of the Federal Rules of Evidence provides that "A statement is not hearsay if—... The statement is offered against a party and is ... (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." The fact that an out-of-court statement is not being offered to prove the truth of the matter asserted by the statement brings the statement outside of the definition of hearsay and also beyond the scope of the Confrontation Clause, i.e. if the statement of the out-of-court declarant was not being offered to prove the truth of the matter asserted by this statement, the admission of the statement into evidence would not violate the Confrontation Clause. Since Cerulli's comments were not offered for the truth of their contents, Cerulli's statements were not in violation of the Confron-

tation Clause as interpreted in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), and *United States v. Inadi,* 748 F.2d 812 (3d Cir.1984).

 Further, even if we were to find that the introduction of Torquato's testimony regarding Cerulli's statements was in violation of the Confrontation Clause, Smith would not be entitled to a new trial because he was not prejudiced in any way by the admission of this evidence. Smith had the opportunity to cross-examine Torquato concerning the statements of Cerulli. Further, the Defendants opposed the giving of a cautionary instruction that the evidence was being admitted solely for the purpose of showing the solicitation of political contributions by Cerulli and not for the truth of showing the involvement of other individuals named by Cerulli. Transcript, Volume 4, pp. 65–71. Most significantly, Torquato's testimony concerning Cerulli's statements was a relatively short and unimportant aspect of the Government's case; Cerulli said nothing about Smith's involvement in the scheme to bribe public officials; in fact, Smith's name was not mentioned by Cerulli at all. Transcript, Volume 4, pp. 72–74.

VII. Alcohol Treatment Records.

Smith contends that this Court's denial of his motions to order disclosure of records of John Torquato and Judy Ellis maintained by alcoholism treatment programs deprives him of his Sixth Amendment right of cross-examination. 42 U.S.C. § 290dd–3 protects the § 290dd–3 records of a patient involved in an alcoholism treatment program conducted, regulated, or assisted by a department or agency of the United States. Such records may only be disclosed under certain circumstances, including "if authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor." 42 U.S.C. § 290dd–3(b)(2)(C). According to this statute and the regulations published at 42 C.F.R. § 2.61, the records can only be disclosed by a court order based upon a showing of

good cause and a finding that the public interest and the need for disclosure outweigh the injury to the patient, to the physician-patient relationship, and to the treatment services. 42 U.S.C. § 290dd–3(b)(2)(C), 42 C.F.R. § 2.64(d). If other competent evidence or sources of information are available, the Court should ordinarily deny the application. 42 C.F.R. § 2.64(e).

During and after a hearing held on April 19, 1985, we weighed the factors indicated in the statute and regulations and determined that the Defendants had not shown good cause for disclosure of the records, and that the public interest and need for disclosure did not outweigh the injury to the patients, to the physician-patient relationship, and to the treatment services. *See* this Court's written Orders of April 24, 1985, Docket # 144, and of May 14, 1985, Docket # 159. Smith's opportunity to cross-examine Torquato and Ellis was not impaired by non-disclosure of the records. There was full evidence that Torquato was an alcoholic and he was subjected to extensive cross-examination regarding his use of alcohol. It is highly unlikely that anything in the records from the alcoholism treatment program could have provided any additional basis for attacking his credibility. *See Bell v. State,* 385 So.2d 78 (Ala.Cr.App.1980); *United States v. Graham,* 548 F.2d 1302 (8th Cir.1977). The same is true as to Ellis. Smith was not prejudiced by the denial of his motions for records and is not entitled to a new trial on this basis.

### VIII. The Eleven-Person Jury.

Smith argues that he is entitled to a judgment of acquittal or new trial because his constitutional rights were violated when this Court permitted the return of a verdict by eleven jurors. The trial in this case lasted for approximately three months. After the charge the remaining alternate was discharged. On the morning of the fourth day of jury deliberation, one of the jurors was involved in a serious automobile accident while en route to the courthouse and was hospitalized. The Court and counsel consulted with her physician by telephone and learned that it would be months before she could deliberate with her fellow jurors. Defense counsel refused to stipulate to a verdict of eleven jurors. After hearing argument by all counsel regarding the Court's options, we invoked Rule 23(b) of the Federal Rules of Criminal Procedure and permitted the verdict to be returned by the remaining 11 jurors.

Rule 23(b) provides that

> ... if the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court a valid verdict may be returned by the remaining 11 jurors.

Rule 23(b) Fed.R.Crim.P. The Notes of Advisory Committee on Rules explain that the relevant amendment to Rule 23(b)

> addresses a situation which does not occur with great frequency but which, when it does occur, may present a most difficult issue concerning the fair and efficient administration of justice. This situation is that in which, after the jury has retired to consider its verdict and any alternate jurors have been discharged, one of the jurors is seriously incapacitated or otherwise found to be unable to continue service on the jury. The problem is acute when the trial has been a lengthy one and consequently the remedy of mistrial would necessitate a second expenditure of substantial prosecution, defense and court resources.

Notes of Advisory Committee on Rules. The event which arose in this case is precisely the type of situation for which Rule 23(b) was designed. We applied the Rule because of the enormous investment of time and energy in this case by the parties, the court, the jurors, and the public.

The Advisory Committee cites the case of *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970) as authority for the pertinent amendment to Rule 23(b). The Court in *Williams v. Florida* held that the Sixth Amendment right to a jury trial does not include a requirement that the jury consist of 12 persons. In *Williams,* the Court upheld Florida's refusal to impa-

nel a jury of more than six persons as provided by Florida law and held that a jury of six did not violate the Defendant's Sixth Amendment rights as applied to the States through the Fourteenth Amendment. Having upheld a six-person jury, the Supreme Court would probably uphold the occasional use of an eleven-person jury pursuant to Rule 23(b) Fed.R.Crim.P. The Court in *Williams* opened the door to the amendment of Rule 23(b) Fed.R.Crim.P. in stating that

> We do not mean to intimate that legislatures can never have good reasons for concluding that the 12-man jury is preferable to the smaller jury, or that such conclusions—reflected in the provisions of most States and in our federal system—are in any sense unwise. Legislatures may well have their own views about the relative value of the larger and smaller juries, and may conclude that, wholly apart from the jury's primary function, it is desirable to spread the collective responsibility for the determination of guilt among the larger group ... Our holding does no more than leave these considerations to Congress and the States, unrestrained by an interpretation of the Sixth Amendment that would forever dictate the precise number that would constitute a jury.

*Williams v. Florida*, 399 U.S. 78 at 103, 90 S.Ct. 1893 at 1907.

▬▬ Smith fails to cite persuasive authority for his contention that Rule 23(b) is unconstitutional. None of the Court of Appeals' opinions in this circuit cited by Smith addresses the issue at bar. In our view, Rule 23(b) Fed.R.Crim.P. is constitutional. Our reliance upon Rule 23(b) Fed.R.Crim.P. did not violate Smith's rights under the Sixth Amendment or under Article III, Section 2 of the United States Constitution.

### IX. The Evidence of the Laventhol-Horvath Contract.

▬▬ Smith argues that the admission of the evidence of the Laventhol-Horvath Contract was irrelevant and prejudicial; however, Smith does not address this argument in any post-trial brief. Laventhol-Horvath is a nationally known accounting firm. The evidence showed that it was willing to enter into a contract to perform the identical FICA recovery services for the Pennsylvania school entities at a substantially lower price than CTA under the contract actually awarded to CTA. This evidence bears on whether or not bribery was involved in the awarding of the contract to CTA; therefore, the evidence of the contract was relevant and properly admitted.

### X. The Testimony of Carol Teufel and the Admissibility of Rebuttal Testimony.

Included in his list of reasons for acquittal and in the alternative for a new trial, Smith lists several items which he does not address in any brief. He contends that the testimony of Carol Teufel was irrelevant and prejudicial and that this Court erred in admitting as rebuttal the testimony of James P. Connor, Ralph Tobelman, David Cole, Carol Curry, Gary Seifert, Edward Allen, Kathleen Destralo, and Leo Morris. Since these contentions are not addressed in a brief we assume that Smith is no longer relying upon them as a basis for his post-trial motions. Additionally, we are of the view that such contentions are without merit.

The grounds listed by Smith in his post-trial motions viewed individually and in total do not form the basis for the entry of a judgment of acquittal or for awarding Smith a new trial. An appropriate order will be entered.